WEBSTER *et al.* v. CLOPECK FISH CO.

No. 5371.    Opinion Filed October 12, 1915.

(152 Pac. 379.)

FRAUDULENT CONVEYANCES — Conveyance of Land — Relation — Proof of Fraud—Scope of Inquiry. The first and second paragraphs of the syllabus in **Wimberly v. Winnstock**, 43 Okla. 615, 149 Pac. 238, are adopted as the syllabus in this case.

(Syllabus by Galbraith, C.)

*Error from District Court, Stevens County;*
*Frank M. Bailey, Judge.*

Action by the Clopeck Fish Company against W. W. Webster and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*J. B. Wilkinson,* for plaintiffs in error.

*N. C. Peters* and *J. L. C. Guest,* for defendant in error.

Opinion by GALBRAITH, C. The defendant in error, as plaintiff, commenced an action in the trial court to cancel certain deeds to real estate described in the petition, and for an order declaring W. W. Webster and Ina Webster Duncan to hold title to the property as trustees for Wm. Duncan, and to quiet title to such real estate in Wm. Duncan, alleging that the Clopeck Fish Company was a judgment creditor of Wm. Duncan, who was insolvent, and that he had confederated with W. W. Web-

ster and Ina Webster Duncan, causing them to take title to such property in order to cheat, hinder, and delay the creditors of said Wm. Duncan, and particularly to prevent the judgment of this creditor from becoming a lien thereon, and preventing it from enforcing collection of its claim against said property. W. W. Webster and Mrs. Duncan filed separate answers, denying the allegations of the petition, and particularly that Wm. Duncan had any interest in any part of the property, and denying that they held the same in trust for him, but averring that they each owned the interest in the property shown by their respective deeds. There was a trial to the court and a finding made in favor of the plaintiff, and a judgment and decree entered canceling the deeds as prayed in the petition, and quieting the title to the property in Wm. Duncan. To review that judgment an appeal has been perfected to this court.

The assignments of error, in effect, present one question; that is, that the judgment of the trial court is not supported by the evidence, and is contrary to law. The facts of the case, in brief, are: W. W. Webster, at the time of the transaction involved in this suit, was a single man, and a brother of Ina Webster Duncan, who was the wife of Wm. Duncan. In June, 1905, Wm. Duncan and his wife and Webster appeared at Yakima, Wash., where Wm. Duncan purchased a grocery stock for a sum in excess of $3,000, paying $1,600 cash, and giving a chattel mortgage on the stock for the balance of the purchase price, $1,580. This grocery business was continued in the name of Wm. Duncan, and Webster clerked in the store as an employee of Duncan, at a salary of $75 per month. The business was apparently prosperous. The evidence shows that the daily sales amounted to some $200, and

that three delivery wagons were used in making deliveries of groceries; that the business was conducted for four or five months, when Wm. Duncan suddenly disappeared, leaving in the nighttime, and without· advising his creditors of his post office address or whereabouts, and the creditors took charge of the stock, subject to the claim of the chattel mortgage thereon. It does not appear what the stock sold for, or the amount of Duncan's indebtedness, but it does appear that the defendant in error reduced its claim to·judgment in Stevens county, Okla., in a sum in excess of $1,000, and that that judgment was the basis of this action. A short time after W. A. Duncan left the State of Washington and his business at Yakima, his wife and Webster, her brother, departed therefrom. A few months later the Duncans and Webster appeared at Long Beach, Cal., and a few months thereafter Wm. Duncan came to Oklahoma, and located at the city of Duncan, where he negotiated with a party for the purchase of a residence and other property located in the city of Duncan, for the sum of $2,500, and wired Webster at Long Beach to come at once, that he had a real estate bargain. A few days afterwards Webster showed up, and the day following his arrival made a deposit of $3,000 in a Duncan bank, and a few days later purchased the property that Duncan contracted for, taking the deed· in his own name, giving his check on the Duncan bank, where he had made the deposit, for the purchase price, $2,500. A few months later a part of this property was sold to a man by the name of Smith. Smith was a witness at the trial. His testimony is rather significant, and is as follows:

"Q. You own property in Duncan? A. Yes, sir. Q. From whom did you purchase the property? A. From

Bill Duncan. Q. Describe the purchase of that property to the court. A. In the summer or fall of 1906 I was here wanting to buy some property. Duncan & Webster's office was the next office to mine, and we got in a conversation, and Mr. Duncan proposed to sell me his home place; we had a buggy, and I got in the buggy and went up there and looked over the place with him, and we bantered back and forth about the price, and I think we went the second time and looked at it, and we finally reached an agreement as to the price, and I asked him for his deed and told him I would write the deed for it, and at that time he told me that Mr. Webster would have to make the deed; that was the first time I heard Mr. Webster's name mentioned in connection with the deal. Q. You had not had any connection with Webster about the matter? A. No, sir. Q. Go ahead. A. He was present a part of the time when Bill Duncan and I were talking; and he told me Webster would have to make the deed, and I hesitated a little about it, and he finally said, with a very significant wink, 'You understand how that is; if I should undertake to sell stuff here in my own name, they would jump on me from every standpoint.' And then I looked the title up, and later on I asked him some questions about it and told him I would take it, and he brought a deed in executed by Mr. Webster to me and we closed the deal."

Webster, after the sale to Smith, conveyed a one-half interest in the remaining property to his sister, Mrs. Duncan, for the consideration of $1 and love and affection.

Webster's testimony that the property was his, and that it was purchased with his money, while plausible, is not convincing. His story as to how he acquired the $3,000 that he had when he arrived at the city of Duncan and how he had cared for it by carrying it around on his person from month to month, and had never deposited it in a bank until his arrival at the city of Duncan, taken

in connection with the fact that a few months prior to that time he was a $75 per month grocer's clerk, tends very strongly to produce the conviction that this was not his money, but the money of his brother-in-law, William Duncan, as the trial court found. The fact that this transaction was between brother and sister and husband is not, of itself, sufficient to impeach it, but this relationship by blood and marriage, taken in connection with the former close business relationship existing between the parties, would, of necessity, cause the trial court to scrutinize closely, and this court, on review, to weigh with care each circumstance, although small in itself, tending to show fraudulent purpose to shield and protect the husband and brother-in-law from the pursuing hand of the creditor.

A careful examination of the record in this case and all the testimony impels the conviction that the finding of the trial court is fully sustained by the evidence. The case of *Wimberly v. Winstock*, 46 Okla. 645, 149 Pac. 239, leaves little, if anything, to be said as to the law of this case. In the careful and well-considered opinion in that case the law of this case is so fully set out that it is not considered advisable to attempt to go over the same ground again in this. In the light of that decision there can be no question but that the judgment of the trial court is fully sustained by the law.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.