### STATE ex rel. MOTHERSEAD, Bank Com'r, v. MOBLEY et al.

No. 15733—Opinion Filed Oct. 13, 1925.

**1. Fraud—Proof of Fraudulent Acts.**

The law will not deduce fraud from any number of acts, each of which is lawful and innocent in itself, but one who seeks to attach a fraudulent character to such acts must go farther and show that they were done with a fraudulent purpose.

**2. Fraudulent Conveyances—Action to Cancel Deed as Fraud on Creditors—Proof of Debtor's Insolvency.**

In an action to set aside a deed charged to be fraudulent as to creditors, it must be both alleged and proved, before the conveyance was made, the debtor was insolvent, and the fact that insolvency existed at the time suit was brought does not raise the presumption that the debtor was insolvent some months prior to that time.

**3. Same—Proof of Fraud.**

In an action to set aside a conveyance as in fraud of creditors the fraud must be clearly and satisfactorily proven, and will not be implied from doubtful circumstances which only awaken suspicion.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; George W. Clark, Judge.

The City State Bank of Wilson, Okla., brought its action against the defendants E. C. Mobley and Gerald Mobley, wherein the bank as creditor seeks to have a certain conveyance of real estate in Oklahoma County from E. C. Mobley to Gerald Mobley canceled and annulled for fraud. Judgment for defendants, and plaintiff appeals. Affirmed.

Brown, Brown, & Williams, for plaintiff in error.

Twyford & Smith, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendants occupying the same relative positions in this court as in the trial court, they will be referred to accordingly.

Plaintiff's petition alleges that about September 22, 1922, E. B. Mobley executed his note to the First National Bank of Wilson in the sum of $1,604.70, due and payable July 1, 1923. Suit having been brought on the note, the district court of Carter county on September ——, 1923, rendered judgment for the First National Bank against B. E. Mobley and E. C. Mobley. Execution was issued and returned, "No property found." That thereafter, the First National Bank and the City State Bank of Wilson consolidated, and the judgment was delivered to the City State Bank as the successor to the First National Bank. That at the time the note was originally executed, E. C. Mobley had $15,000 on deposit in the First National Bank, which he afterwards withdrew and purchased lands in Oklahoma county. That in July, 1923, E. C. Mobley conveyed these lands to Gerald Mobley, the deed reciting a consideration of $7,000, but plaintiff alleges no consideration was paid by Gerald Mobley, and the deed was executed with the intent to hinder delay and defraud the creditors of E. C. Mobley. That E. C. Mobley has no other property out of which judgment can be collected; and prays cancellation of the deed.

Defendants answer by general denial, and Gerald Mobley files his cross-petition alleging he is in possession of the land; that he paid $7,000 for same, $4,000 of which was in cash, and he assumed a mortgage for the balance, and prays the court to quiet title in him.

The cause was tried to the court, judgment was rendered for defendants, and title quieted in Gerald Mobley, and plaintiff appeals.

It appears the plaintiff bank became insolvent and was taken over by the Bank Commissioner of the state of Oklahoma, and that officer was on May 24, 1924, substituted as plaintiff.

Plaintiff assigns as error the insufficiency of the evidence and that the judgment is contrary to law, and relies entirely upon Wimberly v. Winstock, 46 Okla. 645, 149 Pac. 238, and Webster v. Clopeck Fish Co., 51 Okla. 702, 152 Pac. 379, but neither cited case is in point. In the first case cited, the cause was tried to a jury and the court instructed the jury to return a verdict for the defendant, and this was the only question urged on appeal, and this court reversed the judgment and remanded the cause for a new trial on its merits, this court saying:

"We are led to believe the trial judge must have been laboring under a misapprehension of the rules of equity, or of evidence, applicable to a case of this nature, and therefore erroneously concluded that because the plaintiff could produce no witness who could from actual knowledge testify that there was collusion between the parties and fraud in the sale, that he had failed in his proof."

In Webster v. Clopeck Fish Co., supra, the judgment debtor, Duncan, suddenly appeared in Duncan, Okla., and looked around for property. Finding what he wanted, he wired his wife's brother, Webster, to come to Duncan from Long Beach, Cal. Webster came and made a deposit in the Duncan bank, and then gave a check for the property. Smith purchased a part of the property from "Bill" Duncan and never knew Webster in the transaction until the deal was about to be closed, when Duncan told Smith that Webster would have to make the deed, and when asked why Webster had to make the deed, Duncan "with a very significant wink," said: "You understand how that is; if I should undertake to sell stuff here in my own name, they would jump on me from every standpoint." The evidence showed Webster was a clerk in a grocery store and never made over $75 per month, and after the sale to Smith, Webster conveyed a one-half interest in all the other real estate to his sister, Mrs. Duncan, for the consideration of $1 and "love and affection." The court found in favor of Clopeck Fish Company. Webster appealed, and this court affirmed the judgment.

The cases are in no wise similar to the case at bar. Here E. C. and Gerald Mobley were brothers; they were in the confectionery business, and after selling out, they were in the "tailoring" business. E. C. Mobley indorsed a note for another brother, R. E. Mobley, in September, 1922, at which time E. C. had $15,000 on deposit in the First National Bank of Wilson, which money he subsequently withdrew, and with which plaintiff alleges he purchased the land in question, and when suit was filed by the First National Bank on this note, E. C. neither had money in the bank nor the property, he having sold the property in July, 1923, to Gerald Mobley.

The First National and the City State Bank afterwards consolidated, and the City State Bank did not become a creditor of E. C. Mobley until it acquired this judgment by reason of the consolidation, and after E. C. had sold the property to Gerald Mobley.

20 Cyc 419, lays down the rule as follows:

"Under the statute of 13 Elizabeth, and statutes based thereon, a conveyance in fraud of creditors can be assailed only by creditors, and is valid as to all other parties * * * The general rule is that any pre-existing creditor has the right to attach a conveyance made by his debtor as being in fraud of the rights of his creditors. Existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made or the secret trust created, although their claims may not have matured or been reduced to judgment until after such conveyance. * * * The general rule is that a voluntary conveyance cannot be set aside at the instance of subsequent creditors. * * *" Citing cases.

Section 5271, Comp. St. 1921, provides:

"Every conveyance of real estate or any interest therein, * * * made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying, or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

At the time this plaintiff became a creditor by acquiring the judgment, the property was not owned by E. C. Mobley, and the plaintiff had knowledge of the fact that execution had been issued in Carter county and in Oklahoma county, and had been returned indorsed "No property found," but it were useless to pursue this line further, as we are not called to pass upon the question of whether the plaintiff was a pre-existing or subsequent creditor under the facts shown, this question not being raised by the record

Plaintiff argues that the consideration of $7,000 passing from Gerald to E. C. was so

inadequate as to constitute a badge of fraud, and introduces testimony of one D. M. Beatty, who sold the land to a Mr. Rush in 1921 for $15,000, but Beatty testified the land never was worth more than $6,000 or $7,000; that in selling his lands he always sized up his man and put his price up accordingly.

Other witnesses testify that the floods had washed away all the levees around this land in the spring of 1923, and after these floods the lands were worth according to these witnesses from $4,000 to $6,000. Rush sold the land subject to a mortgage of $11,500, which has been reduced. All the evidence is to the effect that when Gerald Mobley acquired the land in July, 1923, for $7,000, he was paying from $1,000 to $3,000 more than it was worth, and the plaintiff's contention of inadequacy of the purchase price is not sustained, and the plaintiff offers no evidence in support thereof.

Plaintiff next contends that as Gerald Mobley testified he paid $4,000 in cash and assumed the mortgage, the transaction is tainted with fraud, because Gerald did not keep his money in the bank and give E. C. a check when he closed the deal. Gerald Mobley explains this by saying he formerly kept a small personal checking account in the First National Bank of Wilson, also kept a small checking account for the confectionery business, and when a bank in Ardmore failed, he withdrew his deposit. The First National of Wilson consolidated with the plaintiff bank. Gerald was afraid of banks and kept his money hidden. That his fears for the safety of his money after the consolidation of the banks was well founded is evidenced by the fact that the plaintiff bank failed and is still in process of liquidation, and the State Bank Commissioner now appears in this action as plaintiff in error.

"The law will not deduce fraud from any number of acts, each of which is lawful and innocent in itself, but one who seeks to attach a fraudulent character to such acts must go further and show that they were in fact done with a fraudulent intent and for a fraudulent purpose." Fisher v. McAlester. 114 Fed. 145.

Plaintiff alleges E. C. Mobley is insolvent and called E. C. Mobley as a witness to prove his insolvency at the time of the trial. Under the rule announced by this court it is not sufficient to prove the insolvency of the grantor at the time of trial or when suit is brought.

In Oklahoma National Bank v. Cobb, 52 Okla. 654, 153 Pac. 134, this court said:

"In an action to set aside a deed as charged to be fraudulent as to creditors, it must be both alleged and proved before the conveyance was made the debtor was insolvent, and the fact that insolvency existed at the time suit was brought does not raise the presumption that the debtor was insolvent some months prior to that time."

"A natural person may sell all his property for a fair consideration if the transaction is bona fide, and the buyer will not be required to take care that the seller provided for and paid all his debts." Collinsville National Bank v. Esau, 74 Okla. 45, 176 Pac. 514.

"A purchase of property from an insolvent is valid, if made in good faith, for a valuable and reasonable consideration, and without knowledge that the sale was made for the purpose of defrauding the creditors of the seller." Williamson v. Oklahoma National Bank, 7 Okla. 621, 56 Pac. 1064.

In an action to set aside a conveyance as in fraud of creditors, the fraud must be clearly and satisfactorily proven, and will not be implied from doubtful circumstances which only awaken suspicion." William J. Lemp Brewing Co. v. Guion, 17 Okla. 131, 87 Pac. 584.

In the instant case all transactions relating to the land were had prior to the plaintiff's acquiring any interest in the judgment. All deeds and mortgages were duly executed and filed of record, and the defendant Gerald Mobley was in actual, open, and notorious possession of the lands, and was living upon the lands and cultivating the same, and under the rules announced by this court, we think the plaintiff has wholly failed to sustain the allegation of fraud, and finding no error in the record calling for a reversal of the judgment of the trial court, the same should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. pp. 503, § 170: 787, § 713. (2) 27 C. J. pp. 770 § 674; 796, § 724. (3) 27 C. J. pp. 820, 821, § 770.