EBEY–McCAULEY CO., a co-partnership composed of Harmon Ebey and J. I. McCauley, H. E. Keefer d/b/a Keefer Supply Company, R. W. (Bob) Minton d/b/a Minton Transports, and P. H. Allen d/b/a O. K. Oil Cementing Company, Plaintiffs in Error,

v.

Julia M. SMITH, George Walter Smith, Rae Lucille Smith, Tommy Lee Smith, a minor, Sheila Rae Smith, a minor, and Gary Walter Smith, a minor, and Ideal Cement Company, a Corporation, Defendants In Error.

No. 38725.

Supreme Court of Oklahoma.

March 15, 1960.

Rehearing Denied June 7, 1960.

King & Wadlington, by Carloss Wadlington, Ada, for plaintiffs in error.

Busby, Stanfield, Deaton & West, by W. V. Stanfield, Ada, and John B. Ogden, Oklahoma City, for defendant in error Julia M. Smith.

BLACKBIRD, Justice.

The present appeal involves an action instituted in June, 1957, to nullify, as in fraud of creditors, certain warranty deeds purporting to convey a 1,315-acre ranch near Ada, and two Ada residential properties all owned by the defendant in error,

George Walter Smith, previous to February 18, 1956. By the first three of said deeds executed and delivered by said defendant in error on said date, he purported to convey to his mother, the defendant in error, Julia M. Smith, each of said realty parcels, hereinafter referred to as the "Ranch Property", the "South Stockton", and the "Circle Addition", respectively. Two of the later deeds sought to be nullified were dated April 18, 1956, and purported to convey the two city residential properties from the said Julia M. Smith to George Walter Smith's minor children, Tommy Lee, Sheila Rae and Gary Walter.

In their pleadings filed in the action, plaintiffs in error, as plaintiff and interveners, described certain judgments they had theretofore obtained against George Walter Smith; alleged the issuance of execution on them with sheriff's returns of "no property found"; and sought judgment not only invalidating the above described alleged fraudulent conveyances, but decreeing said judgment debtors to have valid judgment liens against the described properties, and determining said properties to be subject to levy of execution to satisfy said judgment debts. Before the action came to trial, the defendant in error, Ideal Cement Company, which entered the action in a capacity similar to that of interpleader, deposited with the court clerk, with approval of the other parties and the court, the sum of $16,880, to be distributed in accord with the judgment entered in the case. This sum represented the purchase price said Cement Company, during the pendency of the action, agreed with Mrs. Smith, as the purported record owner of the ranch property, to pay for a 35.96-acre easement across the ranch property. At the close of the trial, the attorney for the plaintiffs and interveners moved the court, inter alia, to subject this fund to the payment of the plaintiff's and interveners' judgments, after determining their relative priority.

After hearing the evidence without a jury, the trial court took the case under advisement, and, in March, 1959, entered judgment cancelling the deeds from Julia M. Smith to the aforenamed minors, but refusing to set aside the deeds from her son, George Walter Smith, to her, and directing the court clerk to pay her the aforementioned easement money. After the overruling of their motions for a new trial, plaintiffs and interveners have perfected the present appeal from the latter part of said judgment.

Our continued reference to the parties will be by their trial court designations, with the term "plaintiffs" including the interveners, as well as the original plaintiff, except when mentioned by individual name.

In two of plaintiffs' propositions for reversal, they urge that the part of the judgment appealed from is contrary to both the evidence and the law applicable thereto. Under one of these—the "Third Proposition"—they contend that George Walter Smith's purported deeds to his mother were void as to them, because there was not a "fair and valuable" consideration given for them; and, under the other, or "Fourth" proposition, they contend that said deeds were fraudulent whether such consideration was given for them, or not, because they were made in bad faith, or for the purpose of hindering, delaying or defrauding creditors. After thoroughly examining the evidence, and applying our pertinent statutes and rules of law thereto, we are of the opinion that, on the basis thereof, the part of the judgment appealed from must be vacated.

The judgment that plaintiff, Ebey-McCauley Company proved it had obtained against the defendant, George Walter Smith, was rendered in October, 1956, and its claim that nothing had been paid on its principal, in the amount $332.31, with certain specified amounts of interest and court costs, was never refuted. Nor did defendants make any effort to negate said Company's claim that said judgment was for insurance premiums due and payable in 1955, several months before the execution and delivery of the purported deeds. Nor was there any dispute about the basis

of the claim of the intervener, H. E. Keefer, which was two judgments. One of these was obtained by Keefer, d/b/a Keefer Supply Company, against Smith in June, 1957, for the principal sum of $4,074.71, with certain specified amounts of interest and costs. Said judgment was shown, without contradiction, to have been based upon two accounts for labor, material and services said judgment creditor rendered and furnished Smith between early July and early November, 1955; and that said accounts were both due and payable before the alleged fraudulent conveyances. The other judgment Keefer established against Smith was obtained in October, 1957, for the principal sum of $7,483.54, with certain specified interest, attorneys fee and court costs; and was based upon material and supplies furnished by the intervener to Smith individually, or d/b/a S. & S. Drilling Company, between October 24, 1955, and September 10, 1956. The unpaid judgment of a third intervener, R. W. ("Bob") Minton was entered against Smith in December, 1957, and was in the principal sum of $463.65, with interest and court costs. It was shown, without contradiction, to have been based on an account for services rendered and material furnished Smith, beginning in November, 1955, and ending in December of that year. The unpaid judgment of a fourth intervener, P. H. Allen, d/b/a Oklahoma Oil Well Cementing Company, was obtained April 18, 1958, in the principal sum of $2,838.14, with interest and court costs, and was for services rendered and material furnished Smith between July 10, 1954, and December 7, 1955.

Some of the undisputed facts developed at the trial were: That the defendant, Julia M. Smith, learned as early as January, 1956, that her son was heavily in debt; that he not only did not have money enough to meet his obligations, but that he didn't have sufficient funds for his and his family's livelihood; that she furnished him the money to meet certain of his debts, including payrolls for his oil field drilling operations, in the amount of $1,000 on January 16th, $1,200 on January 27th, and $350. on February 2nd, all in the year 1956, prior to obtaining from him the deeds in question. That before a Mr. Wescott had, on February 10, 1956, transported certain equipment away from an oil lease on which George Walter Smith was operating a drilling rig, said rig was transferred from the debtor to his mother, Mrs. Smith, because (according to her testimony) George Walter Smith was behind in making the payments on its purchase price, and the bank (which apparently was its mortgagee) was threatening to take it; that, at the time of, and before, execution of the deeds in question, the debtor was "behind" in the payments due on the loan secured by the mortgage on the premises that, previous to their separation, had been his and his family's residence, the "South Stockton" property; that the debtor owed money on both of his automobiles, including about $3,200 on a four-year old Cadillac that had been driven 52,000 miles; and, (according to his own testimony) Smith had no money to pay it; that, among other obligations, the debtor owed some $7,000 in income taxes. The evidence further showed that Julia M. Smith was apprised of this tax obligation in the office of the Collector of Internal Revenue, and it can be inferred that this was prior to execution of the deeds in question. The debtor himself testified that he was being pressed for payment of this obligation but that: " * * * we (he and his wife) didn't have any money to pay any bills with—not even the grocery bill at the store * * *".

It also appears that because of his and his family's dire need of money, the debtor offered to take $1,750 in advance payment of a $2,000 rental installment on the ranch property, which said sum was paid him by check dated January 11, 1956.

Without detailing it further, the evidence clearly shows that at the time the deeds in question were executed, the debtor was without money with which to pay his debts, and no contention is made to the contrary. However, in an effort to show that the debtor's insolvency at that time was not established, defense counsel point to the

debtor's testimony concerning "accounts receivable" he had totalling approximately $50,000. The evidence fails to establish, however, that sufficient if any, funds could be collected on these accounts to pay the debtor's obligations. The testimony of Smith himself indicates that almost half of these claims totalling $24,000 were lost, or rendered uncollectible, through failure to file lien claims therefor within the statutory period; and that his efforts to collect other accounts included in the aforementioned total, had been unsuccessful because those who owed them were financially unable to pay.

■ Nor can there be any question but that, after execution and delivery of the deeds in question, Smith had no property in his name against which execution could be levied, to satisfy his debts. Having sufficient property left for that purpose, after execution of alleged fraudulent conveyances, is the test of insolvency in cases such as the present one. Culp v. Trent, 99 Okl. 112, 226 P. 348, 353. After testifying about her son's automobiles, whose titles were transferred to her, the defendant, Julia M. Smith, was asked on re-cross examination if the debtor had any property left after deeding her the real estate here involved, and she testified that, as far as she knew, he did not. Other than the aforementioned testimony of the debtor concerning the "accounts receivable", there is nothing in the record to indicate that the son had any property whatsoever at that time. The evidence as a whole clearly supports the plaintiffs' allegation of George Walter Smith's insolvency, as that term is defined in the Culp case, supra, both at the time of the execution of the deeds in question and at the time this action was instituted.

On the question of whether there was a "fair and valuable consideration" for the deeds, the evidence is not unequivocal. The only evidence introduced as to the value of the ranch property, encumbered as it was with a mortgage of $25,000, indicated it to have a present market value of be-

tween $100,000 plus, and $127,500 plus. Though the defendant, George Walter Smith, testified that payments totalling $3,200 had been made on the mortgage indebtedness, the record does not reveal what portion of these payments applied on the principal amount of the indebtedness. Nor can the value of the residential properties be determined from the evidence, except whatever inference might be drawn from the amount of their mortgage indebtedness, and the defendant Smith's testimony that efforts to obtain $14,000 for them had been unsuccessful.

■ It is difficult to determine from the testimony of Mrs. Smith and her son whether they claimed that the entire consideration for his deeding the properties to her was her payment of those of his debts which existed previous to such transfers, or whether such consideration included other debts of his that she paid thereafter. Also, it is difficult to determine, with exactness, what the total of these amounts would be, if diminished by income which Mrs. Smith later realized from her handling of some of the business operations begun by her son. The evidence that defendants introduced to show that a fair and reasonable consideration was given for the properties by her payment of debts said creditor had incurred, showed that the total of these payments was materially less than the value of the ranch property alone, less its mortgage debt. Despite the fact that the defendant grantee and her son, the grantor, were allowed to testify that, in these purported transfers of realty they had no intention of defrauding the grantee's creditors; and Mrs. Smith testified that she had no knowledge of the particular debts here involved; she admitted that, before these transfers were made, the intervener Keefer, had apprised her, after he had been trying to collect it, of her son's indebtedness to him. She further testified that her son gave her a list of his debts; and, when interrogated concerning the reason the deeds in question were executed and delivered to her, Mrs. Smith answered: "It was, either, that or lose the property—".

We think this damaging testimony very revealing on the question of fraudulent intent and distinguishes the purported transfers involved here from the usual bona fide ones. In Leonardo v. Leonardo, 102 U.S.App.D.C. 119, 251 F.2d 22, 26 it was said:

"In the law of fraudulent conveyances, the term 'badge of fraud' means any fact tending to throw suspicion upon the questioned transaction. It raises an inference that the conveyance was fraudulent, and throws upon the parties to the transaction the burden of making a satisfactory explanation by more persuasive proof of good faith than is ordinarily required."

Among the indicia, or badges, of fraud, are: inadequacy of consideration (Leonardo v. Leonardo, supra), insolvency of transferer, relationship of the transferer and transferee, pendency or threat of litigation, and transfer of the debtor's entire estate. 24 Am.Jur. "Fraudulent Conveyance", section 14. As hereinbefore shown, the undisputed evidence in this case revealed badges of fraud; and we think that, when considered together, and with other undisputed evidence, they were sufficient to raise an inference that the deeds involved herein were fraudulent. See Title 24 O.S.1951 § 10. In our opinion, the evidence introduced by the defendants never satisfactorily explained the suspicious circumstances surrounding these transfers, nor discharged their burden of overcoming the cited inference.

Accordingly, we think the trial court's judgment, in so far as it refused cancellation of the deeds involved herein, was clearly against the weight of the evidence. That part of said judgment, together with the part ordering payment of the easement money to the defendant, Julia M. Smith, was error, and the court erred in overruling the motions for a new trial. The latter order and/or judgment is therefore reversed and this cause is remanded for a new trial in accord with the views herein expressed.

As it was not necessary for the trial court (because of the result it reached in the judgment appealed from) to determine the issue of the claimed homestead character of the "South Stockton" property, we do not determine it here. Therefore, nothing said in this opinion is intended to influence the trial court in determining that issue, and rendering judgment with respect to that property in a new trial of the cause.

WILLIAMS, V. C. J., and JACKSON, IRWIN and BERRY, JJ., concur.

DAVISON, C. J., and WELCH, HALLEY and JOHNSON, JJ., dissent.