**F. M. HILDEBRAND, Floris D. Hildebrand, Lot Ravenscraft and Mary Ravenscraft, Plaintiffs in Error,**

v.

**A. O. HARRISON, Defendant in Error.**

No. 38979.

Supreme Court of Oklahoma.

April 25, 1961.

499

T. F. Dukes, Hominy, for plaintiffs in error.

Frank T. McCoy, Robert P. Kelly, Pawhuska, for defendant in error.

BERRY, Justice.

This action was brought by A. O. Harrison, hereafter referred to as "plaintiff", against Lot Ravenscraft, F. M. Hildebrand, and their respective wives, hereafter referred to by name or as "defendants", to quiet title to 1,010 acres of land lying in Osage County, Oklahoma, and to cancel

a deed from the Ravenscrafts to Hildebrand.

Plaintiff's asserted title to the land is based upon his purchase at a sale thereof, by the Sheriff of Osage County, on an execution issued on a judgment rendered in favor of Roxie R. Huston and against Ravenscraft by the District Court of Washington County, Oklahoma. Hildebrand's asserted title to the land is based upon a deed from the Ravenscrafts which was executed and recorded prior to the filing of a certified copy of the referred-to judgment in Osage County. Plaintiff contends that said deed is fraudulent and void because made without consideration in bad faith for the purpose of hindering, delaying and defrauding Roxie R. Huston and other creditors of Ravenscraft.

The trial court found in accordance with plaintiff's contention and held the Sheriff's deed to plaintiff to be valid to all of the 1,010 acres of land save 160 acres thereof which was found to constitute the homestead of the Ravenscrafts. From order denying the joint motion of defendants for new trial and the motion of plaintiff for a new trial, all parties appealed.

This is the fourth appeal in this case.

At the trial of the first case, judgment was entered for defendants. Plaintiff filed a motion for new trial which was sustained. Upon sustaining said motion, judgment was entered instanter for plaintiff. The defendants appealed. In reversing the trial court, we held (263 P.2d 174) that the trial court did not err in granting a new trial but did err in rendering a judgment against defendants prior to retrial of the case.

On the second trial, judgment was rendered in favor of plaintiff and defendants appealed. In reversing, we held (288 P.2d 399, 52 A.L.R.2d 413) in substance that the trial court erred in holding that an order confirming an execution sale of land was an adjudication that a portion of the land was not a homestead; in holding that the judgment of a court of a county other than the county of the situs of the land which was sold, constituted constructive notice to a purchaser of said land prior to filing a certified copy of same in the latter county, and in holding that Hildebrand, as Ravenscraft's grantee, could not testify as to his knowledge, good faith, purpose or intention in taking the conveyance. In remanding the case for new trial, we said that " * * * We do not pass on the sufficiency of the evidence, however, for the reason that we are of the opinion that the errors in the admission of evidence hereinabove referred to require that a new trial be had, and correction of such errors may result in considerable change in the sufficiency of the evidence."

On the third trial of the case, judgment was again entered for plaintiff. Defendants filed a motion for new trial which was denied. Defendants subsequently filed an amendment to said motion wherein they asserted in substance that because of the inability of the court reporter, which was attributed to his incapacity, to transcribe his shorthand notes taken at the trial and make a complete record of the trial, it was impossible to perfect an appeal. Without giving consideration to the merits of the amended motion, same was denied. We reversed. (325 P.2d 1071)

On this appeal, defendants assert as error that (1) the judgment is contrary to and is not sustained by law; that (2) the judgment is not sustained by sufficient evidence and is contrary to the evidence.

The plaintiff contends that the judgment of the trial court to the effect that Ravenscraft had a homestead interest in 160 acres of the land in controversy is clearly against the weight of the evidence.

Before considering the contentions of defendants, we deem it advisable to refer to the findings of fact and conclusions of law of the trial court.

The trial court found that the heretofore referred-to judgment in favor of Roxie R. Huston against Ravenscraft was rendered May 2, 1950; that said judgment became final; that on May 4, 1950, a certified copy

of the judgment was filed of record in Osage County; that on June 2, 1950, execution was issued on the judgment to the Sheriff of Osage County; that the execution was levied June 14, 1950; that following appraisal and advertisement the land was sold July 17, 1950 to plaintiff as the highest bidder at the sale; that on July 26, 1950, said Sheriff executed a deed to plaintiff; that the sale on execution was in all respects regular; that a deed under date of April 3, 1950, from the Ravenscrafts to Hildebrand was filed of record by Ravenscraft May 3, 1950; that at the time of execution of the deed, Roxie R. Huston's action against Ravenscraft was pending; that Ravenscraft "was otherwise heavily indebted; that said deed was executed and delivered by said (Lot) Ravenscraft in bad faith and with the intent and purpose of defrauding the said Roxie R. Huston; that Ravenscraft from the witness stand said that he never intended to pay the Roxie R. Huston judgment, and that he considered the judgment unfair and unjust, although it had become a final determination and judgment of a court of competent jurisdiction; that from all of the facts and circumstances arising in the case, it can be gathered that there was a desperate effort on the part of Ravenscraft to place his property beyond the reach of his creditors, particularly the judgment creditor, Roxie R. Huston"; that on April 3, 1950 (date of deed from the Ravenscrafts to Hildebrand) Ravenscraft was insolvent; that there was a close relationship between Hildebrand and the Ravenscrafts; that Hildebrand was Mrs. Ravenscraft's grandson; that Hildebrand was frequently in the Ravenscraft home and "around the Ravenscrafts"; that the transactions "between them require much more scrutiny than would otherwise be the case; that such relationship and contact would give Hildebrand a better opportunity to know about the personal interests and affairs of Ravenscraft; that consequently either Hildebrand knew or could have known by the exercise of ordinary diligence of the indebtedness and insolvency of Ravenscraft and his obligation to Roxie R. Huston" and that "the court therefore finds, from all of the facts and circumstances in proof, that * * * Hildebrand, did have knowledge of the bad faith and intent on the part of Ravenscraft to defraud Roxie R. Huston at the time he took the deed to said lands on April 3, 1950."

The court found further that the NE/4, Sec. 14, T. 27N, R. 9E constituted the homestead of the Ravenscrafts at the time the execution on the Huston judgment was levied; that the land in controversy was at all pertinent times mortgaged to secure a loan in the principal amount of $8,000.

It was stated in the conclusions of law that "Ravenscraft conveyed said lands to the defendant, Hildebrand in bad faith without a fair and valuable consideration and for the purpose of defrauding Roxie R. Huston and other creditors, and that at the time of said conveyance he was insolvent and did not have sufficient personal property upon which execution could levy to satisfy the Roxie R. Huston judgment"; that "Hildebrand had knowledge of facts and circumstances that would raise the suspicion of a reasonably prudent man that would prompt him to inquire into the motives of Ravenscraft if he did not already know, and that in view of all the facts and circumstances in proof, he was charged with and did have knowledge of the fraudulent intent of Ravenscraft in the execution of the deed to him on April 3, 1950." The court concluded further that Ravenscraft's homestead was exempt from levy under the execution; that the deed from the Ravenscrafts to Hildebrand covering the homestead was valid and that Hildebrand's title to the homestead should be confirmed and quieted; that the Sheriff's deed to the remainder of the property in controversy was valid and that plaintiff's claim to said property should be confirmed and quieted; that the title of the respective parties was subject to the mortgage covering the land.

At each of the trials that are herein referred to, a different judge presided.

Defendants contend first that the trial court's finding that "Hildebrand did have knowledge of the bad faith and intent of Ravenscraft to defraud Roxie R. Huston at the time he took the deed to said lands" conflicts with said court's conclusions to the effect that Hildebrand had such knowledge as to require him to make inquiry as to Ravenscraft's motives and in view of all the facts and circumstances he was charged with knowledge of the fraudulent intent of Ravenscraft. Defendants assert that there is a difference "between what a man knows or a finding as to what he should know."

To our way of thinking, the claimed conflict does not exist. In the referred-to findings and conclusions the word "knowledge" is used in the sense of "notice". At p. 636, § 2, 66 C.J.S. Notice, it is said that "Knowledge is not infrequently used as the equivalent of 'notice,' for a person who knows of a thing has notice thereof." In the third paragraph of the syllabus to Ponder et al. v. Beeler Motor Co., 176 Okl. 385, 55 P.2d 1010, 1011, we said "actual notice consists of direct positive knowledge of the fact in question, or of such information that would be sufficient to put a prudent man on inquiry as to the fact in question. Such information constitutes notice of everything which such inquiry pursued in good faith would disclose." In the complained-of finding, the trial court found that Hildebrand was charged with notice, and in the complained-of conclusion pointed out the reason he was charged with having notice.

Defendants further assert that under the second opinion herein (288 P.2d 399) the issue to be tried was whether Hildebrand had "actual knowledge" of the Huston judgment; that since the trial court based its opinion on constructive and not actual knowledge, said court erred. We are unable to agree. As we read the opinion, this case was remanded for new trial on the very issue that defendants contend was foreclosed by said opinion and, moreover, Hildebrand had actual notice if he had such knowledge as to put him on inquiry (Ponder et al. v. Beeler Motor Co., supra). The evidence is clear that Hildebrand was in Bartlesville on the day that the Huston-Ravenscraft case was tried and drove Mrs. Ravenscraft from Bartlesville to her home on the last day of the trial.

Defendants next contend that since the trial court found that the conveyance was made "with the intent and purpose of defrauding the same Roxie R. Huston" and not plaintiff, who was not a creditor of Ravenscraft, and since plaintiff had notice of the Ravenscraft-Hildebrand deed before he purchased the property, plaintiff is not in a position to assert that the deed is fraudulent. Such is not the law.

It is provided in part in 24 O.S. 1951 § 5, that "Every transfer of property or charge made thereon, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest." Consistent with the proposition that conveyances, made with the intention of defrauding creditors, are void, a purchaser of property at an execution sale is permitted to attack a fraudulent conveyance made prior to his purchase at such sale. At p. 918, § 77 c, 37 C.J.S. Fraudulent Conveyances, this is said:

"* * * Accordingly it is a rule of general application that a purchaser of property at an execution sale is entitled to impeach, and be relieved against, a prior conveyance by the judgment debtor which is fraudulent as against the judgment creditor. * * *"

See also 24 Am.Jur. "Fraudulent Conveyances", Sec. 149, p. 289.

Defendants contend, as we understand their contention, that the trial court erred in finding that there was a close relationship between the Ravenscrafts and Hilde-

brand and that said court in fact based its finding as to notice on Hildebrand's part of Ravenscraft's intention to defraud his creditors on said relationship. We are unable to agree.

■ There was competent evidence showing a close relationship between the Ravenscrafts and Hildebrand. It is settled law that where a blood relationship exists between a grantor and grantee, and a conveyance between them is alleged to be fraudulent, the conveyance will be closely scrutinized. See Stoner v. Farber, Okl., 263 P.2d 159 and 37 C.J.S. Fraudulent Conveyances § 96, p. 930. As we read the findings and conclusions of the court, the close relationship between the Ravenscrafts and Hildebrand was only considered as one of the many circumstances that tended to show that Ravenscraft conveyed to Hildebrand with intent to hinder and defraud Ravenscraft's creditors.

■ Defendants contend that the finding of the trial court that the Ravenscrafts' conveyance to Hildebrand was without a fair and valuable consideration is not sustained by the evidence. Again we are unable to agree.

In the contract of sale between the Ravenscrafts which is under date of April 3, 1950, it was recited that the total consideration for the land was $15,000; that $1,000 of said consideration had been paid; that another $1,000 was payable upon "title being perfected"; that Ravenscraft should have the privilege of pasturing not more than 50 head of cattle on the land for five years; that the value of the pasturage was $1,000 per year and that Hildebrand assumed and agreed to pay the mortgage.

The abstract was not brought down to date and was never examined by an attorney. Hildebrand failed to pay any portion of the mortgage indebtedness and failed to pay ad valorem taxes owing as of date of the contract or ad valorem taxes that subsequently accrued. Hildebrand testified that the contract was subsequently modified as to the payment of the consid-

eration for the conveyance. Hildebrand's testimony relative to the consideration paid and the manner of payment is conflicting. Defendants contend that Hildebrand's testimony shows that he paid Ravenscraft a total of $6,839. Plaintiff points to testimony of Hildebrand which tends to show that Hildebrand paid Ravenscraft $8,039 or $1,239 more than the accrued consideration. Defendants contend that Hildebrand's check of April 29, 1950, in the amount of $839 to Ravenscraft represented part payment of the agreed consideration, that Hildebrand's check of June 6, 1950 to Ravenscraft in the amount of $5,000 was given in payment of the balance due on the agreed consideration. There is a notation on the last referred-to check to this effect "payment in full for Ranch in Osage County". There is no notation on the first referred-to check. The checks are the only documentary evidence which tends to corroborate Hildebrand's testimony relative to payment to Ravenscraft. All other evidence relative to payments by Hildebrand to Ravenscraft consists of the uncorroborated testimony of Hildebrand or Ravenscraft.

The record shows that Hildebrand claimed that he destroyed pertinent evidence which would bear upon issues presented by this appeal; that he only destroyed said records after having been audited by an agent of the Collector of Internal Revenue; that certain pertinent documentary evidence which was introduced in evidence was altered in such a manner as to strengthen the contentions of defendants; that upon one occasion Ravenscraft refused to answer a question relative to the transaction in controversy with Hildebrand. He was asked "What was the nature of the deal you had with Hildebrand" and he answered "I sold him a piece of property." He was then asked "What was the sale price" and he declined to answer this question on the grounds that his answer might tend to incriminate him.

We are of the opinion that when all pertinent facts and circumstances are considered, the complained-of finding of the

court is not in fact clearly against the weight of the evidence.

■ Defendants contend that the trial court erred in finding that Ravenscraft was insolvent at the time of the conveyance· in controversy to Hildebrand. Defendants have not referred to evidence sustaining said contention. From our examination of the record, we are convinced that this contention is without substantial merit.

Defendants contend further, as we understand their contention, that Roxie R. Huston should have caused garnishment proceeding to issue against the $5,000 indebtedness from Hildebrand to Ravenscraft instead of causing an execution to be levied on the land in controversy. In view of the fact that the trial court found in effect that such an indebtedness did not in fact exist and the further fact that the order of the trial court confirming the execution sale long ago became final, we find that the foregoing contention is without merit.

■ In Apple v. American Nat. Bank of Ardmore, 104 Okl. 69, 231 P. 79, 82, we said in the second paragraph of the syllabus that "If a transfer is made by a debtor in anticipation of a suit against him, or after a suit has begun, and while it is pending against him, this is a badge of fraud, and especially if it leaves the debtor without any estate, or greatly reduces his property." As heretofore pointed out, the Ravenscraft-Hildebrand conveyance was made after the Huston suit had been filed.

■ We had this to say in the third and fourth paragraphs of the syllabus to Toone v. Walker et al., 115 Okl. 289, 243 P. 147:

"'Badges of fraud' are suspicious circumstances that overhang a transaction, or appear on the face of the papers. The possible indicia of fraud are so numerous that no court could pretend to anticipate and catalog them. A single one may stamp the transaction as fraudulent, and, when several are found in combination, strong and

clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud.

"'Fraud' is a generic term, which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to get an advantage over another. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and unfair ways by which another is cheated, and, while fraud must be proven at law, in equity it suffices to show facts and circumstances from which it may be presumed."

■ To our way of thinking, there is competent evidence sustaining the proposition that the Ravenscrafts-Hildebrand conveyance was without a fair and valuable consideration, and there is also competent evidence showing suspicious circumstances that would tend to show that said conveyance was made for the purpose of defrauding Ravenscraft's creditors. The trial court, in our opinion, was justified in concluding that the evidence failed to repel the inference of fraud created by said circumstances.

■ On repeated occasions we have held that in a case of equitable cognizance, the judgment of the trial court will not be disturbed unless clearly against the weight of the evidence. In the sixth paragraph of the syllabus to Jones v. Novotny, Okl., 352 P.2d 905, 907, this was said:

"In a case of equitable cognizance the judgment of the trial court carries with it a finding of all facts necessary to support it, which could have been found from the evidence, and the judgment will not be set aside unless clearly against the weight of the evidence."

We next consider plaintiff's contention that the findings and judgment of the trial court that the Ravenscrafts had a homestead interest in 160 acres of the land in controversy.

The evidence shows that prior to 1944 the Ravenscrafts maintained their home upon the property in controversy; that in said year they moved to Bartlesville where they thereafter resided; that upon moving to Bartlesville they left a portion of their household effects in a residence building on the land and occasionally returned to and occupied the building for short periods; that the Ravenscrafts continued to vote in the voting precinct that embraced the land; that Mrs. Ravenscraft served on the election board; that the Ravenscrafts considered the 160 acres to be their home and homestead. The testimony of third parties tended to corroborate the last referred-to evidence.

Plaintiff asserts that the fact that the Ravenscrafts maintained their principal residence in Bartlesville from 1944 on shows that they abandoned the 160 acres as a homestead. Plaintiff points to the fact that the Ravenscrafts listed the land for sale in 1948 and 1949 and that Ravenscraft failed to point out to the Sheriff prior to sale of the land on execution the 160 acres that they claimed as a homestead and asserts that said evidence sustains his contention based on abandonment.

In Lane v. Amis Bros. et al., 171 Okl. 593, 43 P.2d 73, 74, we held that the abandonment of a homestead must be established by the most clear, conclusive and convincing evidence; that the matter of whether a homestead has been abandoned is a question of fact in which the parties asserting homestead rights is controlling and that "Abandonment of a homestead is a question of fact in which the intent of the [homestead claimants] is controlling. Abandonment must be established by the most clear, conclusive and convincing evidence."

We are of the opinion that the judgment of the trial court on the homestead issue is not clearly against the weight of the evidence and for said reason we are not at liberty to disturb the judgment.

The judgment of the trial court is in all things affirmed.