O'Dell PAYNE, Plaintiff in Error,

v.

Joe GILMORE, dba OK Furniture and Roofing Co., Defendant in Error.

No. 39743.

Supreme Court of Oklahoma.

Feb. 5, 1963.

Rehearing Denied June 4, 1963.

Lon Kile, Hugo, for plaintiff in error.

O. A. Brewer Hugo, for defendant in error.

JACKSON, Justice.

This is an appeal by O'Dell Payne, as judgment creditor, from a judgment and order of the district court in favor of Joe Gilmore, as judgment debtor, which was rendered after certain proceedings in aid of execution.

The question involved in the trial court was whether or not certain property conveyed by Joe Gilmore to his wife and son should be subjected to execution in satisfaction of a judgment held by Payne against Gilmore.

A statement of the history of the litigation, with particular attention to dates, is necessary for a proper understanding of the issues. On May 28, 1958, Payne filed a claim for workmen's compensation against Gilmore, basing the same upon injuries occurring in January and April of that year. Gilmore did not carry workmen's compensation insurance. On January 27, 1959, the case was heard and the cause submitted with the provision that either party could submit medical testimony by deposition within thirty days, which they did. On March 9, 1959, Gilmore recorded deeds and conveyances by which he divested himself of all the property he owned in the state of Oklahoma, placing title thereto in the names of his wife, Leta Gilmore, and his son, Jack Gilmore, who was at that time a minor attending college in Durant. On March 23, 1959, the State Industrial Court made an award in the compensation case in favor of Payne and against Gilmore in the amount of approximately $3500.00.

The award was not paid, and Payne thereafter began proceedings in aid of execution. He was authorized, under the provisions of 85 O.S.1961 § 42, to file a certified copy of the award in the office of the Court Clerk of Choctaw County, which he did on November 12, 1959. District Court proceedings were then begun and a writ of execution was issued and returned endorsed no property found. Payne then

began garnishment proceedings, under 12 O.S.1961 § 847 et seq., against Leta Gilmore and Jack Gilmore, as garnishees, alleging that they had in their possession property belonging to Joe Gilmore.

At hearings held in 1960 and 1961, the three members of the Gilmore family testified as to their business transactions and relations. The only other witness was the County Clerk of Choctaw County, Oklahoma, who testified that his reception record showed that the deeds and conveyances filed in his office on March 9, 1959, were brought in by, and returned to, Joe Gilmore. Some documentary evidence was introduced.

Payne then filed a "Motion for Adjudication" in which he asked that the deeds and conveyances mentioned be set aside as a fraud upon the creditors of Joe Gilmore, that Gilmore be decreed to be the owner of the property he purportedly conveyed to his wife and son, and that the property be subjected to execution in satisfaction of the Payne judgment from the State Industrial Court.

From the order and judgment of the district court refusing to grant the relief sought, Payne has appealed to this court.

■■ Since the relief sought in the trial court consisted of a cancellation of deeds and conveyances on the ground that they were made for the purpose of defrauding creditors, this case is one of equitable cognizance. Bert Whiteis, Inc., v. Motor Mortgage Co., 182 Okl. 384, 77 P.2d 698; 50 C.J. S. Juries § 32. This court will therefore examine the record and weigh the evidence, and if the judgment is against the clear weight of the evidence, it will be reversed. Richard v. Richard, 172 Okl. 397, 45 P.2d 101.

We now review the evidence in this case, keeping in mind 24 O.S.1961 § 10, which provides as follows:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

The evidence in the trial court established beyond doubt that no monetary consideration was paid for the property conveyed to the wife and son. The conveyances were admittedly between parties closely related; they were made about a year after the injury which was the basis of Payne's workmen's compensation claim; they were made after the claim was filed in the State Industrial Court, and were filed only two weeks before judgment was entered. After the transfers, the judgment debtor, Joe Gilmore, continued to work as manager of the place of business involved, and the purported transferee thereof, his son, continued to attend college, at least during a part of the time. When given a direct opportunity to do so, the son refused to deny that at the time of the transfer, he knew of the Payne compensation claim against his father. The mother denied that she knew of the claim. The son testified that in making the conveyances, the father "stripped himself of everything he owned".

The portion of the evidence above summarized is substantially uncontradicted.

In Ebey-McCauley Co. v. Smith, Okl., 353 P.2d 23, 28, we quoted from Leonardo v. Leonardo, 102 U.S.App.D.C. 119, 251 F.2d 22, 26, as follows:

"In the law of fraudulent conveyances, the term 'badge of fraud' means any fact tending to throw suspicion upon the questioned transaction. It raises an inference that the conveyance was fraudulent, and throws upon the parties to the transaction the burden of making a satisfactory explanation by more persuasive proof of good faith than is ordinarily required."

We then said:

"Among the indicia, or badges, of fraud, are: inadequacy of consideration (Leonardo v. Leonardo, supra), insolvency of transferrer, relationship of

the transferer and transferee, pendency or threat of litigation, and transfer of the debtor's entire estate. 24 Am.Jur. 'Fraudulent Conveyance', section 14. * * *"

█ We hold that the evidence above summarized, being substantially uncontradicted, is more than sufficient to establish the existence of the five "indicia, or badges, of fraud" listed in Ebey-McCauley **v.** Smith, supra.

In Toone v. Walker, 115 Okl. 289, 243 P. 147, this court held in the third paragraph of the syllabus:

" 'Badges of fraud' are suspicious circumstances that overhang a transaction, or appear on the face of the papers. The possible indicia of fraud are so numerous that no court could pretend to anticipate or catalog them. A single one may stamp the transaction as fraudulent, and, *when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud."* (Emphasis supplied.)

We now further examine the record and evidence in this case to see if there is "strong and clear evidence on the part of the upholder of the transaction * * * to repel the conclusion of fraud".

All members of the Gilmore family testified that Joe Gilmore's health was bad, and that he had a "bad heart condition". Because of this condition, Gilmore felt that he could no longer run the business; he testified that his health was the "impelling reason" for the transfers.

The property involved consisted generally of a business known as the OK Furniture and Roofing Company, a half interest in 160 acres of farm land and an undetermined number of rental or residential units (all transferred to the son, Jack); a hotel building and the Gilmore home (transferred to the wife, Leta). There were mortgages in substantial amounts against some of the property, but at least part of it was free of mortgage liens. The record does not clearly show the total amount of the mortgage indebtedness, and there is no evidence as to the total value of the property transferred, although the son, admittedly not an expert witness, testified that the hotel building was worth from forty to fifty thousand dollars.

Concerning the business, the son testified that his father gave it to him; his father testified that his son "accumulated it by working"; that he "just worked himself into it", presumably (from the son's testimony), during summer vacations and on week ends while he was in school, between the ages of 17 and 20.

There was also testimony that sometime in 1958 (Payne's first injury was in January, 1958), a man named Ballard bought a half interest in the OK Furniture and Roofing Company from Joe Gilmore. The record does not show what he paid for it or whether he thereafter participated in the management thereof. Although the son testified that the business was "barely solvent" when he got it in March, 1959, he was able to buy out Mr. Ballard in October, 1959. Ballard did not testify and the price paid to him is not shown. During all of this time, the son was able to make payments of approximately $300 per month on a mortgage against property the father had transferred to the *wife,* the payment of which the son had assumed. The mortgage payments, and lease payments of $100 per month to the wife were all made out of the OK Furniture and Roofing Company business.

With regard to the rental or residential units, the son testified at the first hearing that there were about 18 or 20 of them; at the second hearing, he said his first testimony was in error, and that there were only "two rental properties and a half interest in a piece of property". He said the error was occasioned by the fact that since the transfer, he had himself built some units, and had bought some. It appears that the son was carrying a full college course at Southeastern State College in Durant at the time of the transfer in 1959 and at the

time of the first hearing in May, 1960. At the time of the last hearing in March, 1961, he had been working for several months for the Bell Telephone Company, apparently in another city. Although the father's ill health was the "impelling reason" for the transfer of the property, he continued to manage the business after the transfer, although the son signed the checks. The father is paid no salary for his services as manager.

The son testified he paid full value for the property transferred to him "because of the assumption of debts". He also gave testimony from which it could be inferred that an agreement for the future support of his parents constituted the consideration he paid, or a part of it.

With regard to the property transferred to the wife, she testified that when it was first bought, it was her property, although she later learned that title was not in her name. She testified that at the time of the purchase, "Joe was willing for me to have the home and the business building. I wanted it and that was it".

On cross examination, she gave testimony inferring that the consideration she gave for the property transferred to her in 1959 consisted of work that she had done for her husband in his place of business "off and on for 15 years" without being paid a salary. She admitted that she learned at the time she signed a mortgage to the Jefferson Standard Life Insurance Company, some time prior to the 1959 transfer, that title to the property was not in her name; however, she apparently did not demand a transfer of the property to her until about the time the 1959 conveyances were executed and recorded. This was of course several months after the Payne compensation claim had been filed against her husband.

After a careful examination of the evidence in this case, which we have summarized in some detail above, we are forced to the conclusion that the "upholders of the transaction" did not produce "strong and clear evidence * * * to repel the conclusion of fraud". On the contrary, the whole record in this case shows the existence of the following well recognized "indicia, or badges, of fraud": a transfer of property in consideration of future support, where the rights of existing creditors are prejudiced (24 Am.Jur. Fraudulent Conveyances, Sec. 35; 23 A.L.R. 584); voluntary conveyance from husband to wife while he is in debt (Apple v. American Nat. Bank of Ardmore, 104 Okl. 69, 231 P. 79, 82; Hildebrand v. Harrison, Okl., 361 P.2d 498); failure of the parties charged with a fraudulent transfer to produce available evidence, or to testify with sufficient preciseness as to pertinent details (37 C.J.S. Fraudulent Conveyances § 91); the buyer's employment of the seller of goods to manage the business (37 C.J.S. Fraudulent Conveyances § 93); inadequacy of consideration (Ebey-McCauley v. Smith, supra); transfer of property in anticipation of, or pending, suit, especially where the transfer renders the debtor insolvent or greatly reduces his estate (Ebey-McCauley v. Smith, supra; Hildebrand v. Harrison, supra).

With regard to the testimony of the wife inferring that her past services in her husband's place of business constituted the consideration moving to the husband, in Andrews v. English, 200 Okl. 667, 199 P.2d 202, a creditor's suit, this court held:

"In the absence of a valid agreement to the contrary, there is no implied obligation on the part of the husband to pay his wife for services even though they are rendered outside of the ordinary household duties."

In this case, there was no evidence of any agreement by the husband to pay for his wife's services, and under the above rule of law he had no implied obligation to pay her. The wife's past services therefore could not be said to be a consideration for the property he conveyed to her.

On the question of whether at the time of the 1959 transfer, there existed any legal liability or creditor-debtor relationship, between Payne and Gilmore, see the third

paragraph of the syllabus in Andrews **v.** English, supra, wherein we held:

"The legal liability of an employer to his employee under the Workmen's Compensation Law is included in the legal liability contemplated in 24 O.S. 1941 § 10."

■ In that case we held in effect that an employer who does not carry workmen's compensation insurance is under legal liability to his injured employee *from the date of the injury*. In the case now before us, the first injury to Payne, the employee, occurred about a year prior to the date of execution of the conveyances concerned, and about 14 months before they were recorded. Therefore, Gilmore, at the time of the 1959 conveyances, was under legal liability to Payne within the meaning of 24 O.S.1961 § 10.

■ We hold that the clear weight of the evidence in this case is to the effect that the 1959 transfers were made for the purpose of "hindering, delaying or defrauding" the judgment creditor, O'Dell Payne, and that they were made without a fair and valuable consideration. Since at that time, Joe Gilmore was under a legal liability to Payne within the meaning of the statute, the conveyances are void as to him.

In the answer brief, defendant in error Gilmore argues three propositions. The first one is to the general effect that the judgment is supported by the evidence. We have previously determined this issue to the contrary.

The second one is that the relationship of husband and wife, and father and son, existing in this case, *alone* is not sufficient to shift the burden of going forward with the evidence. While this may or may not be true (we have held that the existence of a single badge of fraud *may* stamp a transaction as fraudulent, Toone v. Walker, supra) the argument is immaterial here for the reason that the record shows the existence of not one, but several, badges of fraud.

The third.proposition is that there existed no garnishable debt as between Joe Gilmore and his son, Jack, and in support thereof the case of Ray v. Paramore, 170 Okl. 495, 41 P.2d 73, is cited. In that case a judgment requiring the garnishee to pay the plaintiff money the garnishee owed the defendant, was reversed for the reason that there was no competent evidence that the debt *garnishee* owed *defendant* was then due.

In the case now before us, the judgment creditor was not trying to reach a debt owed by Jack Gilmore to his father, but was trying to reach *property* in Jack's hands *belonging to his father*. Ray v. Paramore is therefore not in point.

We are aware of the holding of this court in State ex rel. Mothershead v. Mobley, 112 Okl. 152, 241 P. 155, and similar cases, to the general effect that the burden of proving fraud is upon the one alleging it, and that fraud must be clearly proven and will not be implied. These are in accordance with the broad general rule that the burden of *proof* never shifts. However, it is equally well settled that the burden of *going forward with the evidence* can and does shift under proper circumstances. See 24 Am.Jur. Fraudulent Conveyance, Sec. 382, at page 1211, to the following effect:

"Where facts, commonly denominated 'badges of fraud', see supra sections 39–97, appear which are sufficient to raise a presumption that the conveyance is in fraud of the grantor's creditors, the burden of showing good faith is shifted to the parties to such conveyance. * * *"

See also Toone v. Walker, supra.

The judgment is reversed and the cause is remanded to the trial court with directions to sustain Payne's "Motion for Adjudication", and to undertake such other proceedings as may be authorized by law.

BLACKBIRD, C. J., and WILLIAMS, IRWIN and BERRY JJ., concur.

HALLEY, V. C. J., and DAVIDSON and JOHNSON, JJ., dissent.

DAVIDSON, Justice (dissenting).

I am of the opinion that the judgment of the trial court is not against the clear weight of the evidence and should be affirmed and I, therefore, respectfully dissent.