**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 19 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAND O'LAKES INC.,

Plaintiff-Appellee,

v.

LARRY D. SCHAEFER; ELAINE M.
SCHAEFER,

Defendants-Appellants,

and

KING-BOSWELL ENTERPRISES,
L.L.C.; GUARANTY NATIONAL
BANK,

Defendants.

No. 99-7147
(D.C. No. 98-CV-548-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **EBEL** , and **BRISCOE** , Circuit Judges.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendants Larry and Elaine Schaefer appeal the district court's entry of summary judgment against them on Land O'Lakes' (LOL) claim for fraudulent conveyance and on their counterclaims for intentional infliction of emotional distress, invasion of privacy, abuse of process, and tortious interference with contract and prospective business advantage. We have jurisdiction pursuant to 28 U.S.C. § 1291 and Fed. R. Civ. P. 54(b). We affirm. [1]

This diversity action arises out of LOL's attempts to collect an Iowa judgment it obtained against Larry Schaefer for breach of several grain contracts. LOL obtained the judgment on March 11, 1998 in the amount of $127,125.00 plus ten percent interest per annum and costs. During the course of the Iowa litigation, LOL learned that Larry owned a substantial amount of farmland in McCurtain County, Oklahoma. Therefore, in addition to filing judgment liens against Larry's property in Iowa, LOL also filed its judgment with the McCurtain County District Court on April 6, 1998, and with the McCurtain County Clerk's Office on April 20, 1998. LOL attempted to collect the judgment in Iowa by garnishing Larry's bank accounts and levying against the assets of his used automobile business, but LOL was able to recover only about $1,500 from these

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

efforts. On July 27, 1998, LOL conducted a debtor's examination of Larry to find other assets from which it might satisfy its judgment. When asked about the Oklahoma farmland at this examination, Larry testified that he had never owned any farmland in Oklahoma, but that his wife owned some. He further testified that he had not given his wife any property in the past three years.

Contrary to this testimony, Larry had a contract for deed on 1,275 acres of farmland in Oklahoma which he entered into with ReliaStar Life Insurance Co. in November 1990. The final payment was due on or before January 2, 1998, and ReliaStar was to deliver a warranty deed for the property to Larry upon receipt of final payment. Larry also owned 115 acres of Oklahoma farmland that he had purchased from ReliaStar in April 1991. Sixteen days after entry of LOL's judgment against him, Larry transferred all the Oklahoma farmland to his wife, Elaine, via two quitclaim deeds. Larry admittedly received no consideration for this transfer. Several days after receiving the property from Larry, Elaine contracted to sell the 1,275 acre parcel to King-Boswell Enterprises for $573,750.00. The closing took place on April 28, 1998. ReliaStar issued a special warranty deed on the property to Elaine, who then issued a warranty deed to King-Boswell. Larry and Elaine also executed quitclaim deeds on the property to King-Boswell at closing.

When LOL learned of the transfers, it brought this action against the Schaefers, King-Boswell, and its mortgagee, Guaranty National Bank, under Oklahoma's Uniform Fraudulent Transfers Act (UFTA), Okla. Stat. tit. 24, §§ 112-123, contending that the transfers were fraudulent. LOL sought to have the transfers to Elaine and to King-Boswell set aside or, in the alternative, to have judgment entered against Elaine, King-Boswell, and Guaranty National in the amount of its Iowa judgment against Larry.

The Schaefers asserted a counterclaim against LOL based on LOL's allegedly tortious conduct in attempting to collect its Iowa judgment. The Schaefers did not indicate the legal theory upon which they based their counterclaim until they responded to LOL's motion for summary judgment. Then, they contended that their counterclaim was founded primarily on a legal theory of invasion of privacy, but that it also was intended to state claims for intentional infliction of emotional distress, abuse of process, and tortious interference with contract and prospective business advantage. [2] King-Boswell and Guaranty National asserted a cross-claim against Elaine for breach of the warranties of her

---

[2] Although the district court subsequently agreed with LOL's contention that the allegations of the counterclaim did not encompass claims for either invasion of privacy or intentional infliction of emotional distress, the court determined that the point was moot because the Schaefers' allegations and evidence did not support their counterclaims under any of the legal theories they advanced.

-4-

deed to King-Boswell. They sought to recover from her any monies they might be required to pay LOL, plus their attorney fees and costs associated with the suit.

The district court granted summary judgment to LOL against the Schaefers on LOL's claim for fraudulent conveyance and on the Schaefers' counterclaims. The court reserved ruling on the appropriate remedy under the UFTA until it resolved LOL's claim against King-Boswell and Guaranty National. LOL, King-Boswell, and Guaranty National subsequently entered into a stipulation pursuant to which LOL dismissed its claim against King-Boswell and Guaranty National without prejudice and the latter parties dismissed their cross-claim against Elaine. Thereafter, LOL moved the court to enter judgment against Elaine in the amount of its Iowa judgment against Larry, pursuant to Okla. Stat. tit. 24, § 120(B). The district court granted LOL's motion and entered judgment against Elaine in the amount of $161,749.19. In accordance with Rule 54(b), the court expressly determined there was no just reason for delay and that final judgment should enter on the claims between the Schaefers and LOL.

The Schaefers now appeal, arguing that (1) the court erred in ruling that the transfers at issue were fraudulent as a matter of law; (2) even if the transfers were fraudulent, the court erred in entering judgment against Elaine; and (3) the court erred in ruling against the Schaefers on their counterclaims. We review the district court's grant of summary judgment de novo applying the same standard as

the district court under Fed. R. Civ. P. 56(c). *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).

Summary judgment is proper if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326. "When the moving party has carried its burden under Rule 56(c), . . .the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotations and citation omitted). Conclusory and self-serving affidavits are insufficient to meet this burden. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

"The purpose of the [UFTA] is to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing assets out of the reach of present and future creditors." *Burrows v. Burrows*, 886 P.2d 984, 988 (Okla. 1994). The UFTA provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to

-6-

hinder, delay, or defraud any creditor of the debtor[.]" Okla. Stat. tit. 24, § 116(A)(1). The UFTA sets forth a variety of factors, so-called badges of fraud, that the court may consider in determining the debtor's actual intent. *Id.* § 116(B). "A single [badge of fraud] may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud." *Payne v. Gilmore*, 382 P.2d 140, 143 (Okla. 1963) (quotation omitted); *see also Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1339 (10th Cir. 1998) ("When one or more of these badges [listed in the UFTA] are present fraudulent intent can be inferred.").

LOL presented undisputed evidence of numerous badges of fraud associated with Larry's transfer of the Oklahoma property to Elaine. The Schaefers contend that one of the badges of fraud upon which LOL and the district court relied–that Larry was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer–was disputed by Larry's affidavit setting forth his liabilities and assets. The UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation," and that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." § 114(A), (B). The district court held that Larry's testimony at his debtor's examination, coupled with

documentary evidence presented by LOL, established that around the time of the transfer, Larry generally was not paying his debts as they came due. Therefore, Larry was presumptively insolvent under the UFTA.

Larry did not present any evidence to dispute the fact that he was generally not paying his debts as they came due. Instead, he prepared and presented a financial statement purporting to list his assets and liabilities as of May 1, 1998, which showed that the sum of his debts was not greater than the sum of his assets after he transferred the Oklahoma property to Elaine. Even if this financial statement were sufficient to create an issue of fact as to whether the transfer of the Oklahoma property to Elaine actually rendered Larry insolvent, [3] it did not controvert the numerous other badges of fraud established by the evidence and relied on by the district court.

Further, the Schaefers failed to present any probative evidence of a reason for the transfer other than one to hinder, delay, or defraud LOL in its collection efforts. Larry's statement that he transferred the property to Elaine to assist her in obtaining financing was not only conclusory and without support in the record, but it was contrary to the evidence of record. "[C]onclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d

---

[3] Much of the information in this financial statement was unsupported by any evidence and some of it contradicted Larry's earlier testimony at the debtor's examination.

1101, 1113 (10th Cir. 1990) (quotation omitted). On the record before it, the district court did not err in holding that LOL was entitled to judgment on its claim against the Schaefers for fraudulent conveyance.

The Schaefers contend that even if the conveyance of the property was fraudulent, the district court erred in imposing judgment against Elaine as a remedy for the fraud. Sections 119 and 120 of Oklahoma's UFTA set forth the remedies available to a creditor who establishes that a transfer of property was fraudulent. Section 120(B) provides that, to the extent that the transfer is voidable, "the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less," and the judgment may be entered against "the first transferee of the asset or the person for whose benefit the transfer was made," *id.* § 120(B)(1). A transfer is not voidable "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.* § 120(A).

The undisputed evidence established that Elaine did not take the Oklahoma property for a reasonably equivalent value. Nor was there any evidence that she took the property in good faith. Therefore, the transfer of property to Elaine was voidable under the UFTA and, as such, one of the remedies available to LOL was a judgment against Elaine for the lesser of the value of the property transferred or the amount necessary to satisfy LOL's claim. The undisputed evidence

established that the Oklahoma property transferred to Elaine was worth far more than LOL's judgment against Larry. Therefore, the district court properly entered judgment against Elaine for the amount necessary to satisfy LOL's judgment against Larry. We are not persuaded by the Schaefers' contentions on appeal that the district court's entry of judgment violated due process or was improper either because of LOL's allegedly inequitable conduct or Larry's alleged solvency.

Finally, the Schaefers contend that there was sufficient evidence in the record for their counterclaims to survive summary judgment. The district court concluded that the Schaefers' allegations were "wholly insufficient to support any of the legal theories on which the counterclaims are brought." Appellants' App., Vol. II at 801. Based upon our review of the parties' briefs, the record, and the pertinent law, we conclude that the district court was correct. The Schaefers failed to come forward with specific facts which, if proven, would have established any of their claims.

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge