William D. REEVES, d/b/a Reeves Casing Pulling Company, Plaintiff in Error,

v.

Coleman JENKINS, d/b/a Jenkins Pipe & Supply Company, Defendant in Error.

No. 41326.

Supreme Court of Oklahoma.

April 16, 1968.

Jon Gray, Jack B. Sellers, Sapulpa, for plaintiff in error.

Rodgers & Gurley, Blackwell, for defendant in error.

DAVISON, Justice.

William D. Reeves (plaintiff below) appeals from a judgment in favor of Coleman Jenkins (defendant below) in which Reeves was denied any recovery in his action against Jenkins for conversion of oil well casing on which Reeves claimed to have a lien. Judgment was rendered after trial to the court. The parties will be referred to by their trial court designation.

On November 20, 1959, plaintiff filed the present action in *Kay County*, Oklahoma, alleging that on May 7, 1958, he had pulled the casing from a well on an oil and gas lease in *Osage County* and had later filed a lien in Osage County for his services; that he then filed suit in Osage County and recovered a judgment for $575.98, with interest and attorney fees, and for foreclosure of the lien, against White Star Oil Company, and that on a date after May 17, 1958, the defendant had removed the casing from the leasehold, while the same was subject to plaintiff's lien, and had wrongfully converted the casing and refused to return the same to Osage County, or to pay plaintiff the amount of the judgment in the Osage County lien foreclosure. Plaintiff prayed judgment against the defendant for the amount of the Osage County judgment and for an additional attorney fee.

Defendant's answer consisted of a general denial and certain affirmative defenses which are hereinafter related and discussed.

There is little, if any, dispute as to the facts. On April 17, 1958, while White Star Oil Company was drilling a well in Osage County, the defendant sold or furnished to White Star about 3000 feet of 5½ inch casing, with the oral understanding that White Star would pay $1.45 per foot for the casing if the well was a commercial producer, and if the well was a dry hole the defendant would take back the recoverable portion of the casing and give White Star a credit of $1.20 per foot for the portion returned. There is a dispute as to the legal effect of this agreement. Our disposition of this matter does not require a determination of this proposition. The well was a dry hole and pursuant to employment by White Star the plaintiff pulled the casing on May 17, 1958, and left it stacked on the leased property. On May 22, 1958, the defendant removed the casing to his place of business in Kay County and, after giving Star credit for the recovered casing, there was a balance of about $1735.00 due defendant. The record reflects the defendant put the casing back in stock and started using and selling it, and that at the time of the trial in 1962 all of the casing had undoubtedly been disposed of.

On June 1, 1958, a receiver was appointed for White Star by a U.S. District Court in Proceedings for an Arrangement under Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and plaintiff and defendant filed claims therein and at some later date received about 11% of their claims in what we assume was the conclusion of the bankruptcy proceedings. On June 13, 1958, plaintiff filed a lien in Osage County against the leasehold and the casing for $575.98, and the following day the plaintiff filed suit in Osage County against White Star to foreclose the lien. In a letter, dated June 24, 1958, from the receiver in bankruptcy to plaintiff's attorney, the receiver said that there were two dry holes on the lease plaintiff had a lien upon, and stated, "This has no value to White Star therefor if you desire to foreclose your lien on said lease, I can see of no benefit to the Reeves Casing Pulling Co." On August 29, 1958, plaintiff took a default judgment against White Star for $575.98, with interest and attorney fees, and for foreclosure of the lien. On the same day plaintiff discovered that defendant had previously removed the casing to Kay County and, after making demand on defendant for payment, the plaintiff brought the present action in Kay County on November 20, 1959, for a

personal judgment against defendant by reason of his alleged conversion of the casing.

Plaintiff contends that his lien attached the instant he commenced pulling the casing; that the lien followed the casing to Kay County, and that the removal of the casing to Kay County after the lien had attached was a conversion of the property, and entitled plaintiff to recover the amount of the lien, not to exceed the value of the property, together with costs and attorney's fees.

The merit of plaintiff's contention depends on whether the law and authorities cited by him are applicable to the present facts and circumstances.

█ It is true that under the provisions of 42 O.S.1961, § 144, the oil and gas well liens therein provided are effective from the date of the furnishing of the first item of material and the date of the performance of the first labor, and the lien follows and is enforceable against the property wherever the same may be found.

Plaintiff cites Brewer v. Oil Well Supply Co., 126 Okl. 108, 258 P. 866, to support his contention that his lien followed the casing and was enforceable against the property in the possession of defendant. In the cited case Oil Well Supply had furnished machinery and supplies which were used in the drilling of a dry hole and had filed a lien and suit to foreclose the same, when it learned Brewer had purchased the casing used in the well and that Brewer had actually removed a portion of the casing to another county. Oil Well Supply made Brewer a party defendant, alleging Brewer had wrongfully removed or converted the casing, but apparently Oil Well Supply only sought to impress a lien on the lease and equipment and on the casing in the hands of Brewer. The lower court did not render a personal judgment against Brewer, but did find that the lien followed the casing into the hands of Brewer. This court affirmed on the basis of the provisions of Sec. 144, supra.

The facts in the present case and in the Brewer case are similar but the two actions and the relief sought are not the same. In the Brewer case the Oil Well Supply Co., in a single action against the owners of the lease and against Brewer established a valid lien on the lease and the casing in the hands of Brewer. In the present case the plaintiff is not seeking to enforce a lien on the casing with a consequent foreclosure. Plaintiff is seeking a personal judgment against defendant alone in a separate action for a conversion of property on which plaintiff claims to have a lien. The basis of the action is the existence of a lien in plaintiff's favor and if plaintiff has no lien, or has failed to establish a lien, then there is no conversion as to plaintiff.

Plaintiff cites Lesh v. Branch, 177 Okl. 211, 58 P.2d 578, for the proposition that in an oil and gas well situation, the holder of a materialman's lien, in case of conversion of the property to which the lien is attached, can recover from the converter the amount of the lien, not to exceed the value of the property, with costs and attorney's fee. This is a correct statement of the rule of law announced and applied in that case. However, in the Lesh case the liability of the converter was determined in the lien foreclosure action and in conjunction with the fixing of the lien on the property. In this respect the circumstances are different from those in the instant appeal.

From our examination of the record it appears that plaintiff relies upon the judgment rendered in his favor in the Osage County lien foreclosure case to establish his lien upon the casing. The only defendant in that suit was White Star Oil Company and the present defendant (Jenkins) was not made a party after it was learned that he had removed the casing to Kay County.

It is the position of the defendant herein that the judgment rendered in Osage County was not binding on him and further that it was ineffective to establish or to perpetuate plaintiff's lien.

As stated above, plaintiff filed his foreclosure action against White Star in Osage County after White Star had instituted

Arrangement Proceedings under the Bankruptcy Act and after a receiver had been appointed therein by the Federal Court. Plaintiff, with knowledge of such proceedings and receivership, prosecuted the action to a personal judgment and a decree of foreclosure against White Star.

█ A debtor who files a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., places himself in the same category as though he filed a voluntary petition in bankruptcy and he submits to the jurisdiction of the court and surrenders his property. 8B C.J.S. Bankruptcy § 748, pp. 494, 495.

█ It is a further rule that the filing of the petition in bankruptcy is in effect a caveat, and gives notice to the whole world, and is in effect an attachment and injunction restraining all persons from interfering with the property and assets of the bankrupt. The bankruptcy court is regarded as having the custody and control of the property of the bankrupt. 8 C.J.S. Bankruptcy § 140(1), pp. 858, 859.

█ Where the bankruptcy court has acquired exclusive jurisdiction by reason of its custody of the res, it may grant permission to the owner of a claim or lien to institute an action or proceeding in a state court to establish or enforce his claim or lien against the property in possession of the bankruptcy court, and the action or proceeding may be so brought only with such permission. 8A C.J.S. Bankruptcy § 261 (3) b, p. 333; In re Olivit Bros., Inc., 57 F.2d 718 (S.D. New York, 1932); In re Mill Iron Const. Co., 56 F.2d 248 (N.D. New York, 1932).

In Viersen v. Boettcher, Okl., 387 P.2d 133, 135, we stated as follows:

"In federal court bankruptcy proceedings, title to the assets of the bankrupt vests in the trustee in bankruptcy on the filing of a petition under the bankruptcy law, and that title is not subject to divestiture by judgment in an action against the bankrupt, commenced after bankruptcy, to which the trustee is not a party."

See also 8A C.J.S. Bankruptcy § 265(5), p. 377 to the same effect.

█ In view of the above authorities we can only conclude that the plaintiff's action in Osage County against White Star to foreclose his lien upon the leasehold and casing and the judgment rendered therein was entirely ineffective as to White Star and the defendant Jenkins as a foreclosure or as an adjudication that plaintiff had a lien on the property.

Plaintiff contends that the letter of June 24, 1958, from the receiver in the White Star arrangement proceedings under the bankruptcy act, was a disclaimer or relinquishment of all claims and interest in the casing.

The letter, supra, stated regarding the "lease" that, "This has no value to White Star therefor if you desire to foreclose your lien on said lease, I can see of no benefit to the Reeves Casing Pulling Co." The letter is ambiguous and does not mention "casing" and is merely an expression of opinion held by the receiver. If we assume it was intended to be a disclaimer or surrender of assets, then there is no court authorization in the record to sustain it.

█ A bankruptcy receiver ordinarily has no power to surrender, abandon, or make some other disposition of the property in his custody in the absence of an order of the bankruptcy court authorizing such step to be taken. Summe v. Chapman Dairy Company, 238 F.2d 3 (8th Cir. 1956); Gerstel v. Shaw, 71 F.2d 371 (5th Cir. 1934); 8 C.J.S. Bankruptcy § 154.

The judgment of the lower court is affirmed.

All the Justices concur.