HIGHPOINTE ENERGY v. VIERSEN

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:HIGHPOINTE ENERGY v. VIERSEN

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

HIGHPOINTE ENERGY v. VIERSEN2021 OK 32Case Number: 119385Decided: 06/02/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 32, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

Highpointe Energy, LLC., Plaintiff/Appellee,
v.
Ralph W. Viersen III, Patsy Ann Viersen Brown, Shelly A. Minahan, Trustee of the M.A. Viersen Revocable Trust, Dated May 16, 2007, the foregoing if living, but if deceased, then the unknown heirs, executors, administrators, devisees, trustees, grantees, successors, and assigns of such deceased person or persons HLR Oil & Gas, LLC., Keystone Energy Partners, LLC., Okmulgee Minerals, LLC., Viersen Oil & Gas Co., the foregoing if in existence and if not in existence then the unknown officers, successors, and assigns of such entity, Defendants/Appellants,
v.
WAKE ENERGY, LLC, AND CLINE LIVING TRUST dated October 13, 1997. Third-Party Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF MCCLAIN COUNTY

Honorable Charles Gray, Trial Judge

¶0 The appellee, Highpointe Energy filed a quiet title action in the District Court of McClain County against the appellants, the Viersens, and others. The disputed property concerns mineral interests from two different chains of title. One chain stemmed from a bankruptcy proceeding, while the other chain arose from a mortgage foreclosure proceeding and subsequent sheriff's sale. The trial court determined that the chain resulting from the foreclosure/sheriff's sale was superior to the bankruptcy chain. The Viersens appealed and we retained the cause. We hold that because the bankruptcy purchasers could secure no greater rights in the disputed property than the bankruptcy trustee held, the purchasers from the mortgage foreclosure proceeding hold the superior title.

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT AFFIRMED.

W. Blake Hulse, Oklahoma City, Oklahoma, for Plaintiff/Appellee, Highpointe Energy, LLC.

Robert Inglish, Okmulgee, Oklahoma, MaryGaye LeBoeuf, Oklahoma City, Oklahoma, for Defendants/Appellants, Ralph W. Viersen, III, Pasty Viersen Brown, M.A. Viersen Revocable Trust, HLR Oil & Gas, LLC., Okmulgee Minerals, LLC., and Viersen Oil & Gas.

Treavor R. Henson, Tulsa, Oklahoma, For Third-Party Defendant/Appellee, Cline Living Trust.

Travis P. Brown, David M Mahaffey, Lincoln, C. Hatfield, J. Matt Hill, Oklahoma City, Oklahoma, for Third-Party Defendant/Appellee, Wake Energy, LLC.

KAUGER, J.:

¶1 This cause concerns a dispute over the title of approximately ninety net mineral acres located in McClain County, Oklahoma. It centers around two different chains of title stemming from the same property -- one chain resulted from a 1930's foreclosure action and sheriff's deed, and the other chain stemmed from a 1930's bankruptcy proceeding. The dispositive issue in this quiet title action is which chain of title is superior.1 We hold that because the bankruptcy purchasers could hold no greater rights than the bankruptcy trustee held, the purchasers from the mortgage foreclosure proceeding/sheriff's sale hold the superior title.

FACTS

¶2 The disputed oil, gas, and mineral interests are located in McClain County, Oklahoma, in the SW/4 and the SW/4 SW/4 SE/4 in Section 20, Township 9 North, Range 4 West (collectively, disputed property/mineral interests). McClain County, Oklahoma, is located in the south central portion of the State. The history of the disputed property, insofar as this cause is concerned, began in 1923. On September 29, 1923, Carry Hughes (Hughes), owned the disputed property.2 Hughes executed a mortgage covering all surface and mineral interests in the property to The Pittsburg Mortgage Investment Company which was recorded with the McClain County Clerk on October 9, 1923. Later in October of 1923, Pittsburg assigned its mortgage interest in the disputed property to The Women's Home Missionary Society of the Methodist Episcopal Church (the Missionary). The Missionary's assignment was filed of record on January 29, 1925.

¶3 It appears that, beginning in 1927, Hughes also started selling portions of her interests in the disputed property to others. One such purchaser, the Cal-Cul Oil Company, an Okmulgee, Oklahoma corporation (Cal-Cul) is reflected by a January 4, 1927 deed. Okmulgee, Oklahoma, is located in the eastern part of the State. By January of 1933, Cal-Cul, appears as the successor in interest to some of Hughes' interests, as do the Central National Bank of Okmulgee, Sunray Oil Company, and other individuals as well.

¶4 On July 14, 1933, Cal-Cul was adjudged bankrupt in the United States District Court for the Eastern District of Oklahoma, and the court appointed R.E. Lee, as bankruptcy trustee (Trustee) for the company. Subsequently, in April of 1936, while the bankruptcy was ongoing, the Missionary initiated foreclosure proceedings on the disputed property in the McClain County District Court. Hughes, Cal-Cul, the Central National Bank of Okmulgee, Sunray Oil, and several other individuals were listed as defendant/interest owners in the disputed property in the foreclosure proceeding. The Trustee accepted service of the summons in the foreclosure action on behalf of Cal-Cul on May 5, 1936. Apparently, the Trustee neither filed notice of the bankruptcy in the McClain County Clerk's office, nor published notice of the bankruptcy in a McClain County newspaper.

¶5 Both the foreclosure proceedings and the Cal-Cul bankruptcy proceedings were ongoing at the same time in two different courts, in two different parts of the State. It is from these two proceedings in which the two different chains of title to the disputed property initiated.

¶6 The Trustee sold Cal-Cul's assets, including an undivided 2/3 mineral interests to Sam K. Viersen, and an undivided 1/3 to The Central National Bank of Okmulgee, Oklahoma. Okmulgee Minerals, LLC, later acquired The Central Bank's interest in the property, and various family members of Sam Viersen ended up with interests in the disputed property as well. The Trustee's sale of Cal-Cul's interest in the disputed property is reflected in a Trustee Deed, dated October 22, 1937. We refer to this chain of title as the "Viersen" chain.3

¶7 The other chain of title originated out of the foreclosure action and subsequent sheriff's deed. On February 14, 1938, the Missionary obtained a judgment in the foreclosure action, resulting in title to the disputed property. We refer to this chain as the "Missionary" chain. Subsequently, through various conveyances which are not clearly laid out in the record, plaintiff, Highpointe Energy (Highpointe), and the third-party defendant, Wake Energy (Wake), allege that they ended up with portions of interests in the disputed property through the Missionary chain.

¶8 On April 9, 2019, Highpointe Energy filed a quiet title action in the District Court of McClain County, Oklahoma. Highpointe sought to have itself declared the superior interest of the disputed land. Highpointe alleged it received its interest in land pursuant to a Mineral Deed located at Book 2332, Page 232, in the Office of the McClain County Clerk.

¶9 On June 3, 2019, the Viersens answered, and filed a quiet title counterclaim against Highpointe Energy, and a quiet title cross-claim against Wake Energy as a third-party defendant. At some point, another third-party defendant, the Cline Living Trust (Cline), who apparently also claimed some interest through the Missionary chain, was added to the cause. The Viersens argued that Highpointe Energy did not acquire any interest in the disputed land; and any interest Wake Energy or Cline might assert is inferior to the Viersen's interest.

¶10 On June 28, 2020, the Viersens filed a Motion for Summary Judgment. The trial court held a hearing on January 13, 2021, and filed its journal entry of judgment on February 1, 2021. It found that the foreclosure by the Missionary, with notice to the Trustee and Central National, was effective and that it foreclosed the interests of the Viersen chain. It also determined that any equitable considerations are entirely in favor of Highpointe Energy, Wake, and Cline due to the Trustee's unclean hands and various failures in exercising his duties as trustee. The Viersens filed an appeal on March 1, 2021, and we retained the cause on March 2, 2021. The cause was assigned to this chamber on March 30, 2021, without additional briefing ordered.

BECAUSE THE BANKRUPTCY PURCHASERS COULD HOLD NO
GREATER RIGHTS THAN THE BANKRUPTCY TRUSTEE HELD, THE
MORTGAGE FORECLOSURE PURCHASERS HOLD THE SUPERIOR
TITLE.

A.
Standard of Review.

¶11 An action to quiet title is of equitable cognizance, and the judgment of the trial court will be affirmed unless found to be against the clear weight of the evidence.4 Questions of law are reviewed by a de novo standard.5

B.
Our Previous Ruling Involved Some Of The Same Parties, The
Same Bankruptcy Proceeding, And The Same Trustee As This Cause.

¶12 In 1963, the Court, in Viersen v. Boettcher, 1963 OK 262, 387 P.2d 133, reviewed a similar cause involving the same Cal-Cul bankruptcy proceeding and, consequently, the same bankruptcy trustee as this cause. Viersen also concerned a quiet title action between the plaintiffs Boettchers, and the defendants Sam K. Viersen and Central National Bank of Okmulgee. [The same bank and Viersen found in this chain of title are the same parties in the Viersen Chain of title.]

¶13 The property at issue in Viersen was mineral (royalty) interests under a quarter section of land in Roger Mills County, Oklahoma. As a result of the Cal-Cul bankruptcy, two chains of title also developed. Federal Mortgage Loan Company held a mortgage to the property and assigned it to William Sharp. While under the mortgage, the property owners sold an undivided one-half interest in the minerals to the Cal-Cul Oil Company.

¶14 One chain developed after the Trustee sold the property out of the Cal- Cul bankruptcy to Viersen, without actual knowledge or service of notice of the bankruptcy proceedings or the trustee's sale given to the mortgagor, Sharp. The second chain developed when Sharp foreclosed on the mortgage and the Boettchers purchased the property at the sherriff's sale, pursuant to the mortgage foreclosure judgment. The trial court determined that title belonged to the chain resulting from the sheriff's sale -- the Boettchers.

¶15 On appeal, this Court first examined the trustee's sale because it was first in time, setting forth the following rules:

1. Generally, unless the bankruptcy sale is specifically free from liens, only such rights, title and interest as the bankrupt held and owned at the time of the bankruptcy as passed to the trustee, are acquired, subject to any outstanding liens, charges or encumbrances valid and enforceable as against the trustee;

2. If the sale is not expressly ordered to be free and clear of liens, it is a sale subject to liens, and the trustee has no superior rights than the bankrupt had, nor is the trustee regarded as an innocent purchaser for value, without notice of such liens and encumbrances;

3. A purchaser from a trustee takes no better title than the bankrupt or trustee had; and

4. Under the above rules, the trustee stands in the shoes of the bankrupt and a trustee's sale has the same effect as if the bankrupt corporation had made the sale.

Accordingly, the Viersen Court determined that Viersen's interest was subject to Sharp's prior mortgage.

¶16 Next, the Court examined the foreclosure/sheriff's sale, setting forth the following rules:

1. When a real estate mortgage is foreclosed by action, and the owner of an interest in the property is not made a party defendant, the interest of such owner is not foreclosed;

2. Because Viersen, the purchaser under the trustee's sale, was not a party to the subsequent foreclosure proceeding, his interest was not foreclosed thereby and the Boettchers, the purchasers under the sheriff's sale, acquired no interest therein;

3. Because the trustee in bankruptcy was not a party to the mortgage foreclosure proceedings and had no notice thereof, the foreclosure proceeding, as to the trustee, and those claiming under him were void.

Accordingly, the Court determined that the 1937 trustee's sale, under which Viersen claimed, having been held without notice to or service upon the holder of the prior mortgage [Sharp] was not effective to foreclose the interests of the mortgage holder. However, the 1938 sheriff's sale, conducted pursuant to the mortgage foreclosure proceeding in which Viersen and his predecessors were not made parties did not divest Viersen of his interest in the disputed minerals.

¶17 Although the Court did not address whether the mortgage interest could still be foreclosed, it remanded the matter to the trial court with directions to enter quiet title to Viersen, subject to whatever rights Boettcher might have under the mortgage. The Court also discussed a 1938 revision to the Bankruptcy Act, after the sales at issue were completed, which might have resolved the notice issues. Under the revision, recording of the bankruptcy petition, decree of adjudication, or order approving the trustee's bond was required in every county where the bankrupt owned real property.6

C.
The Application of Viersen v. Boettcher, 1963 OK 262, 387 P.2d 133
To This Cause.

¶18 Both sides rely on Viersen, supra, in support of their arguments. The Viersens argue that this cause is nearly identical to Viersen, supra, and that pursuant to its holding, the bankruptcy deed in this cause transferred the mineral interests, but the foreclosure, which was instituted after the bankruptcy had commenced, did not transfer any interest to purchasers at the sheriff's sale. Highpointe argues that if Viersen, supra, is dispositive of this cause, it requires a different result than Viersen, supra, reached because: 1) the Missionary personally served the Trustee with notice of the foreclosure proceeding; 2) the Trustee failed to discharge the Missionary's liens; and 3) the Trustee neglected to file notice of the bankruptcy in the foreclosure proceeding.

¶19 While there are many similarities between this cause and Viersen, supra, there are also some significant factual differences.7 Applying the principles outlined in Viersen, supra, to the facts of this cause, like Viersen, supra, the Trustee's deed was also filed first in time in this proceeding. In this cause, the bankruptcy sale was not ordered to be free from liens. Under the holding of Viersen, supra, the Trustee did not obtain any more rights to the disputed property than Cal-Cul had when it entered bankruptcy. Consequently, the Trustee's sale to Viersen, and those claiming under him, held the disputed property with the Missionary's mortgage as a cloud on the title.

¶20 Nevertheless, in Viersen, supra, the Court observed that the trustee in bankruptcy was not a party to the mortgage foreclosure proceedings, and had no notice thereof. It was these facts that led the Court to hold that the foreclosure proceedings as to the trustee, and those claiming under him, were void. However, in this cause, Cal-Cul was a named defendant in the foreclosure proceedings, and the Missionary served the Trustee notice of the foreclosure proceedings as well. The bankruptcy purchasers in this cause had at least constructive notice, if not actual notice, that the Missionary mortgage existed and was filed of record, and that the Trustee was not selling the property free and clear of all or any liens.

¶21 There is nothing in the record to show that the Trustee took any steps to file a copy of the bankruptcy petition in the foreclosure proceeding [regardless of whether he was required to by bankruptcy law]; to seek permission of the bankruptcy court to participate in the foreclosure proceeding; to secure a stay in foreclosure proceedings; to participate in any manner at all; or to attempt to extinguish the mortgage debt in the bankruptcy proceedings. The Trustee had both notice and opportunities to remove the cloud on the title which he ignored. Consequently, we cannot conclude that pursuant to Viersen, supra, the foreclosure proceedings were void against the Trustee or those claiming under him.8 The bankruptcy purchasers were not innocent purchasers for value without notice.9

¶22 On the other hand, the Missionary, as the mortgagor, expressly made Cal-Cul a party defendant to the foreclosure. The Missionary was at least aware of the bankruptcy because it served notice on the Trustee of the foreclosure. The Trustee did not make the Missionary aware of specific bankruptcy hearings, nor does it appear that the Trustee gave Missionary notice of the public auction to sell Cal-Cul assets to act as a "creditor" or "pseudo creditor," even though it did publish notice of the sale in the Daily Oklahoman and Tulsa World. Nothing in the record suggests that the Missionary participated in the bankruptcy as a "creditor" or even a "pseudo-creditor" of Cal-Cul.

¶23 The Trustee deed was filed in McClain County on November 10, 1937, and the foreclosure proceeding was not completed until April 30, 1938, with the Sheriff's deed issued on October 7, 1938. Clearly, the Sheriff's sale purchasers were not innocent purchasers for value without notice either. When the foreclosure proceedings were filed, and the Decree of Foreclosure entered, the records of the McClain County Clerk disclosed that Cal-Cul had an interest in the disputed minerals; and that a Trustee's deed had been issued.

¶24 The answer to who holds superior title in this cause is therefore not determined by notice or lack thereof. Rather, it is found in Viersen, supra, and in the nature of the interest the Trustee held, and consequently, the subsequent interest the bankruptcy purchaser's obtained. In Viersen, supra, the Court said:

¶5 Since the 1937 trustee's sale was first in point of time, we will consider it first, and in that connection we take note of the following well established rules with regard to federal court bankruptcy proceedings and sales:

"The rule `caveat emptor' prevails in bankruptcy sales, as in all judicial sales, unless special direction otherwise is made in the order of sale. Generally, unless the sale is specifically free from liens, only such rights, title and interests as the bankrupt held and owned at the time of his adjudication in bankruptcy, and as passed on to the trustee, are acquired, subject to any outstanding liens, charges or encumbrances valid and enforceable as against the trustee." Remington on Bankruptcy, Vol. 6, Sec. 2569.

"If the sale is not expressly ordered to be free and clear of liens, it is a sale subject to liens." Remington on Bankruptcy, Vol. 6, Sec. 2576. "* * * the trustee has no superior rights or greater interest in the property and occupies no better position with respect thereto than the bankrupt. * * * the trustee takes the property, not as an innocent purchaser for value, without notice, but as the debtor had it at the time of bankruptcy, subject to all valid claims, liens, and equities." 8 C.J.S. Bankruptcy § 199.

"A purchaser from the trustee in bankruptcy takes no better title than the bankrupt or trustee had." Higgs v. Renfrow, 195 Okl. 545, 159 P.2d 749.

"* * * Title to assets vests in the trustee on filing of a petition under the Act, and that title is not subject to divestiture by judgment in an action against the bankrupt, commenced after bankruptcy, to which the trustee is not a party." Remington on Bankruptcy, Vol. 3, Sec. 1402; Hull v. Burr, 61 Fla. 625, 55 So. 852, 26 ABR 897.

¶6 Under the above rules of law and the undisputed facts in this case, it may be said that the trustee's sale had exactly the same effect as if the bankrupt corporation itself had sold the severed minerals prior to the adjudication in bankruptcy. Insofar as the question of title is concerned, the trustee in bankruptcy stood in the shoes of the bankrupt, and took no better title than the bankrupt had. It is conceded that the bankrupt corporation held the severed minerals subject to the prior mortgage; the trustee sold it the same way. It is not alleged, and the record does not show, that the order authorizing the trustee to sell the severed minerals specifically directed him to sell them free of liens or encumbrances, or that the trustee's sale was had with the consent of the mortgage holder.

¶7 We therefore hold that the purchasers at the trustee's sale, and those claiming under them, held the severed minerals here concerned subject to the prior mortgage. Such being the case, the mortgage, with the related right to foreclose upon non-payment of the debt it secured, was still valid as to the severed minerals.

¶25 The only reason the trustee's deed was superior to the sheriff's deed in Viersen, supra, was because the Trustee was not given notice of the foreclosure, and thus did not have any opportunity to participate in the foreclosure proceeding, or otherwise clear the title of the mortgage lien. Here, not only was the Trustee given notice, but the clear weight of the evidence reflects that he failed to take any steps to participate whatsoever in the foreclosure proceeding. Accordingly, we affirm the trial court's ruling that the foreclosure proceeding chain of title, which was no longer clouded by the Missionary's mortgage, is superior to the bankruptcy chain of title which remained clouded.

CONCLUSION

¶26 The bankruptcy purchasers held no greater rights than the bankruptcy trustee held. The Trustee held Cal-Cul's interest in the disputed property with a cloud on the title secured by the Missionary's mortgage. The Trustee had notice of the foreclosure proceedings and neglected to take any action to clear the title and sell the disputed property interest free and clear of all liens. Consequently, pursuant to the rationale of Viersen v. Boettcher, 1963 OK 26, 387 P.2d 133, the purchasers under the Sheriff's deed chain of title hold the superior title.

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT AFFIRMED.

Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, Combs, Gurich, Rowe, JJ., concur.

FOOTNOTES

1 The appellants' Petition in Error filed March 1, 2021, enumerates ten different issues on appeal. The appellees argue that this cause boils down to arguments concerning the proper application of a previous case to this cause. While we address the asserted issues as arguments for reversing the trial court's decision, we succinctly treat them as one dispositive issue on appeal -- which chain is superior to the other.

2 We note at the outset, that land record documents reflect various holders of varying degrees of interests in the property prior to, and since 1923. To avoid confusion, we refer only to the primary interest holders involved in this cause, and are not concerned with the precise portion of their interest insofar as this opinion is concerned.

3 Various interests in the Viersen chain culminated in oil and gas leases to HLR Oil and Gas, LLC, on August 28, 2017, and Keystone Energy Partners, LLC, on July 18, 2018.

4 Krosmico v. Pettit, 1998 OK 90, ¶23, 968 P.2d 345; Shanks v. Collins, 1989 OK 115, ¶16, 782 P.2d 1352; Carson v. Keith, 1967 OK 206, ¶11, 433 P.2d 956.

5 Hogg v. Oklahoma County Juvenile Bureau, 2012 OK 107, ¶5, 292 P.3d 29; Kluver v. Weatherford Hosp. Auth. 1993 OK 85, ¶14, 859 P.2d 1031.

6 The dissent in Viersen v. Boettcher, 1963 OK 262, 387 P.2d 133, argued that the revision of the Bankruptcy Act was nothing more than a codification of existing law and that, as a result, because the trustee failed to file a record of the bankruptcy proceeding in the counties wherein Cal-Cul owned interests in real property, the purchaser's interest from the bankruptcy proceeding were foreclosed by the mortgage foreclosure proceeding. The majority's holding appears dependent on the lack of notice of the mortgage foreclosure proceeding to the bankruptcy proceeding, coupled with the timeline of the trustee sale occurring first, followed by the sheriff sale, followed by revisions to the Bankruptcy Act.

7 The timeline of events in this cause is set forth as follows:

1. Hughes mortgaged the disputed property on September 29, 1923, and the mortgage was filed of record on October 9, 1923. According to the judgment in the foreclosure proceeding, the mortgage was filed on October 9, 1923, in Book 52, on page 256 of mortgages in the office of the County Clerk of McClain County, Oklahoma. The original mortgagor sold the mortgage to the Missionary on October 22, 1923, and the assignment was filed for record on January 29, 1925, in Book 59 at page 119 of mortgages in the office of the County Clerk of McClain County, Oklahoma.

2. On October 22, 1923, the Missionary bought the mortgage from the first mortgagor and the assignment was filed of record on January 29, 1925.

2. Subsequently, Cal-Cul obtained its interest in the property on January 4, 1927, even though the property was mortgaged to the Missionary. [At the very least, Cal-Cul had constructive notice that the mortgage existed because it and the assignment were recorded in the land records. Cal-Cul clearly took its interest subject to the mortgage.].

3. Cal-Cul was adjudicated bankrupt in July of 1933, and the bankruptcy court issued an order confirming the sale of the Cal-Cul's property interests on January 25, 1934.

4. The Missonary initiated foreclosure proceedings on April 14, 1936, and Cal-Cul, along with other oil companies were expressly named defendants in the foreclosure proceeding, along with the caveat, "if existing and if they or any of them be dissolved, then their successors, trustees and assigns."

5. The Missionary served the Trustee with a summons of the foreclosure proceeding, issued on April 28, 1936, returned on May 8, 1936, and filed on May 12, 1936. [With the Missionary having served the Trustee, at this juncture, it cannot be said that the Trustee was unaware of the foreclosure proceedings, or that the Missionary was unaware of the Cal-Cul bankruptcy.]

6. According to language in the Trustee Deed, the Trustee gave all of Cal-Cul creditors notice on June 30, 1937, that Cal-Cul's assets would be sold by public auction on September 20, 1937. [The Trustee Deed does not reflect who the creditors were, but it does reflect that the notice was also published in the Okmulgee Daily Times, the Daily Oklahoman, and the Tulsa World, apparently nothing was published specifically in McClain County, where the disputed property is located. To the extent the Missionary held a mortgage on property owned by Cal-Cul, Missionary was, in some sense, a creditor of Cal-Cul -- though not directly.]

7. The bankruptcy court's order confirming the sale was issued on September 28, 1937, The Trustee Deed was issued on October 22, 1937, wherein Viersen obtained his interest in the property, but the bankruptcy court did not appear to discharge any of the liens on the disputed property, nor did the Trustee deliver title to Viersen free and clear of any and all liens. [Nor did the Missionary participate in the bankruptcy proceedings.]

8. The Trustee's deed was filed on November 10, 1937, in the office of the County Clerk of McClain County.

9. Notice of the foreclosure was published in McClain County, in the Purcell Register, for four weeks in a row in December of 1937. The record does not reflect that any additional or state-wide publications were made.

10. The trial court, in the foreclosure proceeding, issued judgment on the foreclosure on April 30, 1938, and the Sheriff's deed was issued on October 7, 1938.

8 The Viersens argue that the fact that the trustee was served should not affect the outcome because the bankruptcy court would have had to give him permission to take corrective action. Hall v. Main, 34 F.2d 528 (E.D. Ill. 1929); Rhodes v. Elliston, 29 F.2d 737; Reeves v. Jenkins, 1968 OK 4, 439 P.2d 941. This is precisely the point. There is no indication from the record that the Trustee attempted to obtain permission of the bankruptcy court to intervene, or participate as a party defendant. According to Hall, supra, while a plaintiff may be entitled to have a Trustee participate in the state court proceedings, it is the bankruptcy court who could direct such and even restrain the action in state court so as to permit the trustee to adequately prepare his papers and intervene. That was not done in this cause. This is also why the Viersens argument that the Trustee cannot be bound by the foreclosure proceeding because as an "owner in interest" he was not made a party to the proceeding is unconvincing. See, Sautbine v. Keller, 1966 OK 209, 423 P.2d 447. However Cal-Cul, as the owner in interest was a party to the foreclosure proceeding.

9 Parties acquiring interest in a property from one of the defendants of a quiet title action with knowledge of the pendency of the action are bound by the judgment rendered against the defendant. Galeener v. Reynolds, 1937 OK 368, 69 P.2d 49.

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 1989 OK 115, 782 P.2d 1352, 60 OBJ 1779, Shanks v. CollinsDiscussed
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. AuthorityCited
 1937 OK 368, 69 P.2d 49, 180 Okla. 200, GALEENER v. REYNOLDSDiscussed
 1945 OK 205, 159 P.2d 749, 195 Okla. 545, HIGGS v. RENFROWDiscussed
 1963 OK 26, 382 P.2d 140, PAYNE v. GILMORECited
 1963 OK 262, 387 P.2d 133, VIERSEN v. BOETTCHERDiscussed at Length
 1966 OK 209, 423 P.2d 447, SAUTBINE v. KELLERDiscussed
 1967 OK 206, 433 P.2d 956, CARSON v. KEITHDiscussed
 1968 OK 4, 437 P.2d 247, BROWN v. GOLDSMITHCited
 1968 OK 46, 439 P.2d 941, REEVES v. JENKINSCited
 2012 OK 107, 292 P.3d 29, HOGG v. OKLAHOMA COUNTY JUVENILE BUREAUDiscussed
 1998 OK 90, 968 P.2d 345, 69 OBJ 3237, Krosmico v. PettitDiscussed

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA