IN RE THE MARRIAGE OF WILLIAMSON

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:IN RE THE MARRIAGE OF WILLIAMSON

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

IN RE THE MARRIAGE OF WILLIAMSON2022 OK CIV APP 14Case Number: 119304Decided: 11/30/2021Mandate Issued: 05/05/2022DIVISION IVTHE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 14, __ P.3d __

IN RE THE MARRIAGE OF:

CRAIG AARON WILLIAMSON, Petitioner/Appellee,
v.
SABRINA STEELE WILLIAMSON, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
POTTAWATOMIE COUNTY, OKLAHOMA

HONORABLE DAVID CAWTHON, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Keith A. Jones, KAJONESLAW, PLLC, Tulsa, Oklahoma, for Petitioner/Appellee

Ryan J. Reaves, MULLINS MULLINS SEXTON & REAVES, P.C., Oklahoma City, Oklahoma, for Respondent/Appellant

STACIE L. HIXON, PRESIDING JUDGE:

¶1 Sabrina Steele Williamson (Mother) appeals the trial court's December 11, 2020 Journal Entry, which ultimately stems from Craig Aaron Williamson's (Father) objection to her request to relocate to Florida with their child, G.W., for her new husband's employment. Mother appeals the trial court's order declining to appoint a primary physical custodian of the child and requiring G.W. to attend a private virtual school in order for her to alternate--every three months--between living in Oklahoma with Father and in Florida with Mother. Mother also appeals the trial court's order requiring the virtual schooling only be supervised by a parent or step-parent, despite Mother and her husband's full-time employment. Additionally, Mother appeals various orders regarding child support, including the order that neither party pay child support.

¶2 Based on our review of the record and applicable law, and given the errors identified below, we reverse the trial court's judgment in its entirety. On remand, the trial court shall appoint one parent as the primary physical custodian of G.W. and then proceed to enter other orders consistent with this Opinion.

BACKGROUND

¶3 The parties were married in 2010, and G.W. was born in 2014. The parties were later divorced on September 23, 2016, pursuant to an Agreed Decree of Divorce and Dissolution of Marriage under which they shared joint legal custody and equal physical custody of their child. No primary physical custodian was appointed in the decree or joint custody plan, and no child support was ordered.

¶4 Mother subsequently married Dan Johnson, a member of the United States military. In February 2018, Mother notified Father that she desired to relocate with the minor child to Florida for her husband's employment with the military. On March 2, 2018, Father filed an objection to the relocation and a motion to modify the decree and joint custody plan, requesting the court award him primary physical custody of G.W. and enter a long-distance visitation schedule for Mother. Mother responded, denying that Father should be awarded primary physical custody.

¶5 On May 17, 2018, the parties entered an agreed Modified Joint Child Custody Plan ("agreed plan"). Under the agreed plan, the parties exercised equal periods of physical custody with G.W., with each parent generally having physical custody of her every six months with options to visit in the interim. Neither party was appointed as the child's primary physical custodian in the agreed plan. The agreed plan only set forth the parties' periods of physical custody until May 31, 2020.

¶6 On July 16, 2019, Mother filed a "Motion to Modify Visitation and Child Support," noting the agreed plan only provided a physical custody schedule until May 2020. She asserted G.W. would begin school in August 2020, rendering the current physical custody schedule unworkable. Thus, she requested the trial court award her primary physical custody, subject to Father's liberal rights to visit the child pursuant to a long-distance visitation schedule, and award her child support pursuant to the Oklahoma Child Support Guidelines.1 Over three months later, Father filed a response to the motion, combined with his own motion to modify. In his motion, he requested the court award him primary physical custody and child support. He also noted he had remarried in late 2018, resulting in G.W. gaining a step-sibling, and had moved to Shawnee, Oklahoma. Mother timely objected to Father's motion.

¶7 A hearing was held on the respective motions on July 27 and 28, 2020. After hearing the evidence, the trial court found the "propriety" of Mother's relocation was resolved by the agreed plan. Rather than appointing a primary physical custodian, the court ordered G.W. to alternate between her parents' homes every three months and ordered that she attend a private virtual school to effectuate the physical custody schedule. The trial court ordered each party to pay 50% of all expenses of the private virtual learning, and prohibited anyone other than the parents or step-parents from supervising the virtual learning, absent an emergency. The trial court also entered various orders regarding child support, including requiring neither party to pay child support.

¶8 Mother appeals.

STANDARD OF REVIEW

¶9 The trial court is vested with discretion in awarding child custody and visitation, and we will not disturb the trial court's judgment "absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence." Daniel v. Daniel, 2001 OK 117, ¶ 21, 42 P.3d 863. An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. In the Matter of BTW, 2008 OK 80, ¶ 20, 195 P.3d 896.

¶10 However, the issue of whether the trial court was required to appoint a primary physical custodian in this case is a question of law, reviewed de novo. See Highpointe Energy v. Viersen, 2021 OK 32, ¶ 11, 489 P.3d 28. Under de novo review, "the Court has plenary, independent, and non-deferential authority to determine whether the trial tribunal erred in its legal rulings." Hub Partners XXVI, Ltd. v. Barnett, 2019 OK 69, ¶ 6, 453 P.3d 489.

¶11 Moreover, child support proceedings are of equitable cognizance, where the judgment will not be disturbed unless the trial court abused its discretion or unless the court's finding was clearly contrary to the weight of the evidence. Merritt v. Merritt, 2003 OK 68, ¶ 7, 73 P.3d 878. The issues in this case, though, require an interpretation of the applicable child support statutes, which presents a question of law reviewed de novo. See Hub Partners XXVI, 2019 OK 69, at ¶ 6.

ANALYSIS

¶12 Mother alleges the trial court erred by failing to appoint a primary physical custodian of G.W. We agree.

¶13 Title 43 O.S.2011, § 112.3 outlines the procedure to be followed when a "person who has the right to establish the principal residence of the child" seeks to permanently relocate with the child more than 75 miles from the child's principal residence. For a period of time, divisions of the Court of Civil Appeals were in conflict as to whether a parent with joint custody of a child was "the person entitled to custody" who could initiate the statutory relocation procedure. Compare In re the Marriage of King, 2016 OK CIV APP 31, ¶ 11, 371 P.3d 1139 with Caber v. Dahle, 2012 OK CIV APP 19, ¶ 30, 272 P.3d 733.

¶14 The Supreme Court resolved this conflict in Boatman v. Boatman, 2017 OK 27, ¶ 4, 404 P.3d 822, where the mother appealed the trial court's denial of her application to relocate with the child. In Boatman, the parties equally shared time with their child under a joint custody plan, which did not name either of them as the primary physical custodian, and no court order dictated which household represented the child's primary residence. Id. at ¶ 3. The Court held that "a joint custodian who is not the primary physical custodian cannot invoke the relocation statute." Id. at ¶ 6. The Court explained that "before a joint custodian can invoke the relocation provisions, the court must make a determination regarding who is the primary physical custodian." Id.

¶15 The Court then determined that the mother did not have primary physical custody; therefore, she was not "the person entitled to custody" who had the statutory authority to relocate the child. Id. at ¶ 7. The Court found this conclusion was supported by related statutory provisions, including the statutory definition of the "principal residence of a child." Id. (citing 43 O.S.2011, §§ 112.3(A)(4), 112.3(B)(1)). The Court explained that because the child's primary residence was not designated in any court order and because the child resided equally with both parents, neither parent had the right to establish the child's principal residence. Id. at ¶ 7. Accordingly, the Court found that the mother could not unilaterally invoke the relocation provisions. Id.

¶16 This finding, however, did not resolve the issue as to whether the mother could legally relocate with the child. The Court remanded the case for the trial court to hold a hearing to modify the joint custody plan and appoint a primary physical custodian of the child. Id. The Court explicitly stated that the appointment of a primary physical custodian under the joint custody plan "is necessary in light of the obvious change of circumstances due to Mother's relocation." Id. The Court explained that after a joint custody plan has been issued, the trial court may modify or terminate joint custody if it determines that the plan is not in the best interests of the child, and once this conclusion is reached, the trial court can proceed to determine whether relocation is proper. Id.

¶17 To determine whether the relocation is proper, the Court held the trial court should employ a two-step process. Id. at ¶ 8. First, the parent seeking relocation has the burden of demonstrating that the proposed relocation was made in good faith. Id. If successful, then the burden shifts, and the parent objecting to relocation must show that the proposed relocation is not in the child's best interests. Id. If the parent seeking relocation is unsuccessful in demonstrating good faith, then the burden of demonstrating that relocation is in the child's best interests remains with him or her. Id.

¶18 In the present case, the parties had joint custody of G.W.2 A primary physical custodian was neither designated in the decree, the initial joint custody plan, nor in the agreed plan. The parties also shared equal time with the child. In this circumstance, Boatman holds that when one parent seeks to relocate with the child, it is necessary to appoint a primary physical custodial parent, so the trial court may then determine whether the parent seeking relocation is entitled to invoke the statutory relocation procedure to permanently relocate with the child.

¶19 Though we commend the parties' cooperation in entering the agreed plan to address sharing time with the child in view of Mother's relocation to Florida, such agreement was not permanent. The time-sharing provisions in the agreement ended by their own terms, and the agreement did not designate a primary physical custodian for G.W. The relocation statute also specifically provides that temporary orders relative to the relocation may be entered. See 43 O.S.2011, § 112.3(H). Thus, despite the entry of the temporary agreed plan, Mother ultimately sought to relocate permanently with the child. Once the parties filed their respective motions to modify the agreed plan, the trial court should have appointed one parent as the primary physical custodian of G.W. and proceeded pursuant to Boatman.

¶20 We hold that under Boatman, the trial court cannot eschew its duty to appoint a primary physical custodian in long-distance joint custody situations by simply ordering a child to continue exercising equal time with his or her parents, and then directing the child to attend virtual school to implement such order. Such interpretation of Boatman also comports with other Supreme Court precedent that recognizes the relationship between parents and their children is necessarily different after divorce, and it may be unrealistic to try to preserve one parent's close physical involvement in the child's everyday life, particularly when the other parent relocates out of state. See Kaiser v. Kaiser, 2001 OK 30, ¶ 26, 23 P.3d 278 (quoting with approval Tropea v. Tropea, 665 N.E.2d 145, 151 (N.Y. 1996)).

¶21 The trial court's failure to appoint a primary physical custodian was error, and the judgment is reversed in its entirety. On remand, the trial court shall appoint one parent as the primary physical custodian of G.W. If Father is appointed as the primary physical custodian, then Mother is not entitled to permanently relocate with the child under section 112.3, and the trial court shall enter an order setting a long-distance visitation schedule for Mother. If Mother is appointed as the primary physical custodian, the trial court shall determine if her relocation with the child is proper using the two-step process in Boatman, outlined above. If the court determines Mother's relocation with the child is proper, then it shall enter an order setting Father's long-distance visitation schedule.

¶22 In appointing a primary physical custodian, the best interests of G.W. shall be the paramount consideration. See Daniel, 2001 OK 117, at ¶ 21. Based on the record, it is clear that the trial court believed the most important consideration was ensuring the parties had equal time with their child, without other considerations as to whether the consequences of such arrangement were in G.W.'s best interests. For instance, both parties' preferences were for G.W. to attend the "brick-and-mortar" or traditional public schools in their respective districts, and they both indicated it was in G.W.'s best interests to attend a traditional school instead of a virtual school. Meanwhile, though the trial court surmised that at G.W.'s age, virtual school was not as detrimental as it would be to an older child, the record is devoid of any evidence as to whether it was actually in the child's best interests to attend virtual school.

¶23 As another example, Mother presented evidence about a school option that would have allowed G.W. to attend an in-person school while in Florida and transition to a virtual option for the same school while in Oklahoma. Father's concern with the hybrid option was essentially that G.W. would enjoy attending in-person school (and in particular making friends) in Florida, and thus, would not like living with him as much as with Mother. The trial court cited "neutrality" as one of the reasons for rejecting the hybrid option.

¶24 In addition to losing sight of the child's best interests, the trial court also lost sight of its own role. Incredibly, the trial court not only ordered G.W. to attend virtual school, it also ordered that she attend a particular school suggested by Father, called Laurel Springs, unless the parties otherwise agreed. It is not the court's business to become involved in every day decisions of child rearing that are properly the prerogative of the parents. See Kaiser, 2001 OK 30, at ¶ 37. We recognize the temptation to interfere with the parents' decisions regarding their children when they exercise joint legal custody and cannot agree on significant issues affecting the child's best interests, such as education. However, the appropriate inquiry in this case was for the trial court to determine which parent should be appointed a primary physical custodian for G.W., and if Mother was appointed, to determine if her relocation with the child was proper.3

¶25 The order that G.W.'s virtual schooling only be supervised by a parent or step-parent is another example of the court's micromanagement of parenting decisions. Mother offered uncontroverted testimony indicating such an order would require her to quit her job and render her unable to maintain employment. Father, on the other hand, would have had no issue complying with such a requirement because his wife is not employed. We are perplexed as to why this order was entered--neither parent requested it, and there was no evidence either parent ever subjected the child to inappropriate caregivers.4 Our research reveals no binding precedent where a parent was prohibited by the court from arranging child care necessary to maintain his or her employment in similar circumstances. Indeed, Oklahoma statute contemplates that parents may opt to arrange for child care in order to obtain and maintain employment. See 43 O.S.2011, § 118G(A).

¶26 Thus, on remand the trial court shall determine which parent shall be appointed as primary physical custodian of G.W. in view of the paramount consideration of the child's best interests. The court shall also refrain from making decisions that are properly made by the parties as joint custodians of their child.

¶27 Mother also alleges the trial court erred by ordering Father to pay no child support. Again, we agree.

¶28 Though neither party was required to pay child support in the agreed decree, both parties requested child support in their respective motions to modify, placing the matter at issue. Neither party agreed that child support should not be ordered during the present proceedings. Additionally, the trial court specifically determined Father's current yearly gross income was $124,000.00, or $10,333.00 a month. Mother presented evidence that her current yearly gross income was around $36,500.00. However, the trial court imputed her gross income at $42,000.00 a year, or $3,500.00 a month based on her testimony that she had been offered other jobs at that salary but declined them because they involved a significant commute that would result in increased time away from G.W.5 Utilizing such amounts, Father's child support obligation was $517.70 per month pursuant to the Child Support Guidelines. Yet, the trial court ordered he pay no child support. The trial court also ordered each party to pay 50% of the expenses of the private virtual learning program. Such orders imputing income to Mother, not requiring Father to pay child support, and requiring Mother to pay half of the virtual school costs were entered despite the order regarding the supervision of G.W.'s virtual schooling, which effectively prevented Mother from maintaining her employment.

¶29 The Child Support Guidelines are not optional. Carr v. Carr, 1992 OK 106, ¶ 10, 834 P.2d 970. There is a rebuttable presumption that the amount of the award that would result from the application of the guidelines is the correct amount of child support to be awarded. 43 O.S.2011, § 118. Under the circumstances of the present case, the trial court was permitted to deviate from the amount indicated by the guidelines if the deviation was in the best interests of the child, and the amount of support so indicated was "unjust or inappropriate" under the circumstances. 43 O.S.2011, § 118H(B).6 If the trial court deviates from the amount indicated by the guidelines, the court "shall make specific findings of fact supporting such action." Id. at § 118H(C). Such findings shall include:

1. The reasons the court deviated from the presumptive amount of
child support that would have been paid pursuant to the guidelines,

2. The amount of child support that would have been required under
the guidelines if the presumptive amount had not been rebutted, and

3. A finding by the court that states how, in its determination:

a. the best interests of the child who is subject to the support award determination are served by deviation from the presumptive guideline amount, and

b. application of the guidelines would be unjust or inappropriate in the particular case before the tribunal.

Id.

¶30 In the journal entry, the trial court merely stated that the deviation requiring no child support was "appropriate" and "in the best interest of the minor child." Such findings are insufficient to comport with section 118H(C)(3), and are likewise not supported by the record.

¶31 The trial court's order that the parties each pay 50% of the private virtual learning program also represents a deviation from the child support guidelines. 43 O.S.2011, § 118(B) (stating the Schedule of Basic Child Support Obligations accounts for basic public education expenses); Lockhart v. Lockhart, 1996 OK CIV APP 56, ¶ 12, 919 P.2d 454 (describing adding private school tuition to the child support amount as a deviation from the guidelines). The trial court again failed to make the requisite specific findings to support the deviation. See 43 O.S.2011, § 118H(C). Thus, the trial court erred by ordering no child support and requiring the parties to equally split the private virtual school tuition without making the requisite findings. On remand, the trial court shall revisit child support and apply the Child Support Guidelines or provide the specific findings required by statute to support any deviation if such findings are supported by the evidence.

¶32 Mother also argues the trial court erred by ordering that "[n]either party shall pay daycare expense or child care expense to the other party." We assume such order was entered because the trial court prohibited the parents from utilizing child care to accommodate the requirement that G.W. attend virtual school. However, 43 O.S.2011, § 118G(A) states the trial court "shall determine the actual annualized child care expenses reasonably necessary to enable either or both parents to: 1. Be employed; 2. Seek employment; or 3. Attend school or training to enhance employment income." (emphasis added). Section 118G(C) states that the "actual annualized child care costs incurred for the purposes authorized by this section shall be allocated and added to the base child support order, and shall be part of the final child support order." (emphasis added). The trial court's failure to follow these statutory directives was error. On remand, the court shall determine the actual annualized child care expenses pursuant to section 118G(A) and allocate and add such expenses to the child support order as required by section 118G(C).7

¶33 Last, Mother alleges the trial court erred by failing to require Father to contribute to the child's health insurance expenses and by ordering each party to pay their own transportation expenses. As for the health insurance expenses, on remand, the cost of the actual health care premium for the child shall be determined and allocated as required by 43 O.S. Supp.2018, § 118F. Regarding transportation expenses, 43 O.S.2011, § 118D(G) states:

Transportation expenses of a child between the homes of the parents may be divided between the parents in proportion to their adjusted gross income, so long as the payment of such expenses does not significantly reduce the ability of the custodial parent to provide for the basic needs of the child.

¶34 Though section 118D(G) does not mandate that the parties' transportation expenses be divided between them, when a division is ordered, it must be done in proportion to their adjusted gross incomes. Thus, the trial court did not err by ordering the parties to pay their own transportation expenses. However, given our reversal of judgment, the trial court may revisit the issue of transportation costs on remand. If the court determines transportation expenses should be divided between the parties, any division shall be done in accordance with section 118D(G).

CONCLUSION

¶35 In summary, the trial court failed to appoint a primary physical custodian of G.W., necessary to determine whether Mother was entitled to permanently relocate with the child. The court also overlooked the child's best interests by focusing exclusively on ensuring the parties maintained equal time with the child, though they live in Oklahoma and Florida. It is also not lost on us that the trial court entered an order that effectively required Mother to quit her job, while simultaneously not providing her with any child support, ordering her to pay half of the virtual school tuition costs, and requiring her to pay her own transportation costs. Regardless of the intent behind such orders, the aggregate effect was to punish her for relocating.

¶36 As stated above, the December 11, 2010 journal entry is reversed. On remand, the trial court shall appoint one of the parties as the primary physical custodian of G.W., with her best interests being the paramount consideration, and in a manner otherwise consistent with this Opinion. The trial court shall also enter orders addressing the issue of child support in a manner that comports with this Opinion and applicable statute.

¶37 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

FISCHER, V.C.J., concurs, and RAPP, J., concurs specially.

RAPP, J., concurring specially:

¶1 I concur specially to note, without degrading virtual schools, that I would favor a requirement of one Parent having Child for the brick-and-mortar school year with alternating major holidays and the other Parent having Child for the summer. Virtual schools in this instance would be a disaster as implemented by the trial court.

FOOTNOTES

1 On August 19, 2019, the parties entered an agreed order, transferring the case from Logan County to Pottawatomie County. A guardian ad litem was also appointed by agreement, although the trial court ultimately prohibited her from making any recommendations at the hearing on this matter.

2 Neither parent sought termination of joint custody.

3 In this case, the record indicates there would have been no dispute about the proper school for G.W. to attend had the trial court simply appointed a primary physical custodian.

4 Father argues on appeal that the order should be affirmed because the loss of Mother's job would allegedly not create a financial burden for her family because of her husband's income. This argument is beside the point. The decision of whether Mother should continue her employment is a decision for her to make, not for Father or the trial court.

5 We question whether such income was properly imputed given Mother's uncontroverted concerns about taking the jobs, and the trial court's finding that the decrease in Mother's income was not an attempt to avoid child support. Mother does not raise this issue on appeal. However, in light of the reversal of the judgment in its entirety, the issue may be revisited on remand.

6 Under section 118H, deviation is also allowed if determined to be in the child's best interests, and: the parties are represented by counsel and have agreed to a different disposition, or if one party is represented by counsel and the deviation benefits the other party.

7 Section 118G was amended effective November 1, 2021; however, subsections A and C were not substantively amended.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Civil Appeals Cases
 CiteNameLevel

 1996 OK CIV APP 56, 919 P.2d 454, 67 OBJ 2000, Lockhart v. LockhartDiscussed
 2012 OK CIV APP 19, 272 P.3d 733, CABER v. DAHLEDiscussed
 2016 OK CIV APP 31, 371 P.3d 1139, IN RE THE MARRIAGE OF KINGDiscussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1992 OK 106, 834 P.2d 970, 63 OBJ 2139, Carr v. CarrDiscussed
 2001 OK 30, 23 P.3d 278, 72 OBJ 1479, KAISER v. KAISERDiscussed at Length
 2001 OK 117, 42 P.3d 863, 72 OBJ 3708, DANIEL v. DANIELDiscussed at Length
 2003 OK 68, 73 P.3d 878, MERRITT v. MERRITTDiscussed
 2008 OK 80, 195 P.3d 896, IN THE MATTER OF BTWDiscussed
 2017 OK 27, 404 P.3d 822, BOATMAN v. BOATMANDiscussed
 2019 OK 69, 453 P.3d 489, HUB PARTNERS XXVI, LTD. v. BARNETTDiscussed at Length
 2021 OK 32, 489 P.3d 28, HIGHPOINTE ENERGY v. VIERSENDiscussed
Title 43. Marriage
 CiteNameLevel

 43 O.S. 112.3, Relocation Notification of ChildrenDiscussed at Length
 43 O.S. 118, Child Support GuidelinesDiscussed
 43 O.S. 118D, Computation of Child Support Obligation - Percentage of Combined Gross Income of Both Parents - Computation for Each Parent Required - Transportation Expenses - Support Order - Summary Form - Social Security Numbers RequiredCited
 43 O.S. 118F, Medical Support OrdersCited
 43 O.S. 118G, Actual Annualized Child Care CostDiscussed
 43 O.S. 118H, Deviation from Child Support GuidelinesDiscussed

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA